112 So.2d 493

**Bill PARKER**

v.

**STATE.**

8 Div. 403.

Court of Appeals of Alabama.

March 17, 1959.

Rehearing Denied April 7, 1959.

Noble J. Russell and Robt. Straub, Decatur, for appellant.

John Patterson, Atty. Gen., and Wm. C. Younger, Asst. Atty. Gen., for the State.

CATES, Judge.

Parker, on August 12, 1957, was accused of illegally possessing prohibited liquors (Code 1940, T. 29, § 98).

His trial to a jury in the Morgan County Court resulted in a verdict of guilty, with a fine being therein fixed at $250, to which the court, upon adjudication of guilt in conformity with the verdict, added as additional punishment a six months' term of hard labor. On March 24, 1958, the trial judge overruled a motion for new trial. Hence this appeal.

Parker lived in the northeast part of Morgan County a short distance off the Lower River Road which runs northeasterly toward Valhermosa Springs.

The chief deputy sheriff testified that around 1:00 P.M., August 11, 1957 (the day

before the "raid"), he and another deputy had gone into the woods on land lying across a public road from Parker's home, and had there discovered several caches of wildcat whiskey from which a trail led toward the road ending at a point "just North of the mail box."

Until shortly after dark the two deputies kept watch to see if Parker would come into the woods. During this time they saw Parker cross the road to his mail box two or three times, but he had nothing in his hands and he never went into the woods. They did not see the mail carrier. That night it rained.

On August 12 the sheriff and several of his deputies appeared with a search warrant at Parker's house at about 5:30 or 6:00 o'clock in the morning and found him, as he answered the door, barefooted and dressed in his night clothes.

After exhibiting the warrant, the officers proceeded to search the house and surrounding area. In Parker's mail box located across the public road from Mr. Parker's house (two witnesses estimated the distance from the front door to the mail box as being forty to forty-five feet), one of the deputies discovered two pints of wildcat whiskey.

There was one set of a man's tracks going to and coming from the mail box to Parker's house. Also the officers noticed car tracks in the public road. A further search in the woods on the opposite side of the road disclosed several jugs of whiskey and two empty barrels which reeked of an odor which was described as that of wildcat whiskey.

Mr. Parker and the high sheriff had spent most of the time during the search in the farmyard looking over some pigs. Apparently, when the deputies returned with the whiskey found in the mail box, upon confrontation, Parker said he didn't know anything about it.

One deputy testified, "When we got to jail he said he was going to plead guilty. He was not going to let it go to trial." It was further testified, with respect to the barrels, that Parker asked the deputies how many they found, and upon being told, he said, "You missed one." The witness then rejoined, "I told him to tell me where it was and we would go back and get it and he said, 'I was only kidding.' "

■ No objection was taken to the testimony as to the finding of the whiskey in the mail box on any supposed ground that the mail box might have been considered within the curtilage of the dwelling house, and hence the fruits of its search would be subject to exclusion because there was a search of a dwelling house made before eight o'clock in the morning. Title 29, § 220. We do not consider the mailbox as being located within the curtilage.

At the close of the State's evidence, the defendant took the stand and testified in his own behalf that he was in bed when the sheriff and his deputies came. He did not dispute ownership of the mail box, but denied putting any whiskey in it and also disclaimed any knowledge of any whiskey found there. According to Parker the land across the road was the property of a Mrs. Hendrix.

At the close of the case, Parker made a motion to exclude the State's evidence. After the jury had been withdrawn, the trial judge stated that he agreed that the State had failed to make out a case of possession, except for the defendant's purported statement that he was going to plead guilty and not let it go to trial; but he thought that this statement was sufficiently inculpatory to make the question of possession one for the jury's determination.

■ A mere statement of intention to plead guilty should not be treated as an admission of guilt. Very often it is less onerous to pay a small fine than to be put to the time and expense of going to court. Moreover, the statement itself is ambiguous, in that it does not say as to what charge Parker intended to plead to. Thus, in Brunson v. State, 26 Ala.App. 255, 157 So. 678, an examination of the original record discloses that the defendant offered to plead guilty to

a misdemeanor, and the admission of such an offer was reversible error in that case on a trial of an indictment for felony. Wilson v. State, 246 Ala. 129, 19 So.2d 780.

A confession by definition requires express words acknowledging the substantial truth of a fact charged, which fact is unequivocally inculpatory. See Wigmore on Evidence (3d Ed.) § 821.

In Harrison v. State, 235 Ala. 1, 178 So. 458, it was held that a voluntary offer of compromise must embody an *express* admission of guilt.

The holding in Johnson v. State, 24 Ala. App. 316, 134 So. 821, furnishes an instance of a virtually identical question; the court, per Bricken, P. J., saying:

"State witness Tucker was permitted to thus testify: 'I remember when the defendant was in jail last year under this charge and I had a conversation with him.' The question was asked: 'I will ask you whether or not you asked him this question, "William what are you going to do about your case," and he replied, "I am going to plead guilty."' The lower court construed the alleged statement, 'I am going to plead guilty,' as a voluntary confession of his guilt. In this there was error. The statement in question was in no sense an admission by the accused that he had committed the offense complained of. His intention or purpose in this connection may have been prompted by entirely different motives, and the constrained construction placed upon the remark was highly prejudicial to the substantial rights of the accused. * * *"

There is an alternative reason why this case should be reversed. Assuming, arguendo, that the defendant's statement that he intended to plead guilty can be treated as an inculpatory extrajudicial admission, and, therefore, partakes of the nature of a confession, then it is necessary to consider whether or not the proper prelude to the introduction of the confession had been laid at the time of the testimony adduced by the State, or afterwards.

It is our view that the corpus delicti was never established. Admittedly for the purpose of introducing a confession, ordinarily the corpus delicti is not composed of that element of the crime commonly called the agency of the defendant. However, in a case of possession of a prohibited liquor, the very name of the crime calls for the pointing out of some person to whom the object in question is connected to the extent of being under his dominion. In other words, there cannot be possession without there being some juridical person to whom the object is attached by the relationship.

Under this view, the presence of the two pints of whiskey in the mail box, which was not situated on defendant's premises, cannot be imputed to him without some showing of his actually or constructively exercising some element of custody or control. Cf. Evans v. State, 39 Ala.App. 404, 103 So.2d 40. Thus, we can no more impute the possession of the liquor in the mail box to Parker than we can to the Postmaster General. These pints were, under the evidence in this record, bona vacantia.

As to the whiskey found in the woods, we agree with the trial judge that the evidence thereabouts is insufficient to show the quantum of interest by the defendant to impute possession to him. Alabama has never been committed to the "beaten path" doctrine (in locations not exclusively under defendant's control), as a matter of circumstance, which alone can convict without proof of some act of guilty knowledge. Moreover, the evidence here would not, in our opinion, support a conviction on the circumstances alone, since the trail here came out of the woods onto a "well travelled public road." See Revette v. State, 209 Miss. 860, 48 So.2d 511. This feature of the evidence appears to be governed by analogy to the case of Hudson v. State, 249 Ala. 372, 31 So.2d 774. For a treatment of numerous decided cases as to sufficiency of evidence to

establish constructive possession of prohibited liquors, see Grimes v. State, 38 Ala. App. 94, 76 So.2d 684.

For denial of Parker's motion as well as the refusal of the affirmative charge, the judgment below is due to be

Reversed and remanded.