In the Matter of the. WELFARE
OF A.J.M.

No. C4–83–1926.

Court of Appeals of Minnesota.

May 22, 1984.

Review Granted July 27, 1984.

William R. Kennedy, Henn. County Public Defender, David Knutson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., Thomas L. Johnson, Hennepin County Atty., Paul R. Jennings, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by SEDGWICK, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived. ·

## OPINION

SEDGWICK, Judge.

This is an appeal from an order finding the appellant, a juvenile, delinquent. Appellant was charged by petition with burglary and theft over $150. The petition was supported by evidence obtained as a result of a search pursuant to a warrant of a co-defendant's home. Appellant's counsel moved to suppress the physical evidence seized as the fruits of an illegal search. The motion was denied and appellant was adjudicated delinquent. We affirm.

## FACTS

The Foster residence at 5820 West Broadway, Crystal, was burglarized while the Fosters were on vacation. A large amount of coins and jewelry were taken. J.P., a teenager who lived down the street from Fosters, learned the Fosters were on vacation from the victim's son, Greg. J.P. told Greg Foster he intended to burglarize the Foster home. Mrs. Foster made a statement to the police that whoever did the burglary was familiar with the home. J.P. had been over to the house many times before.

Eleven days after the burglary a concerned citizen reported to police an argument she overheard between J.P. and his mother regarding stolen jewelry. J.P.'s mother was overheard saying that she wanted the stolen goods removed from the house immediately.

Based on this information, the police immediately drafted a search warrant to search the house where J.P. lived. The police informed J.P.'s mother that they had a search warrant to search for coins, jewelry and a large jewelry box. She told police that the items were in J.P.'s bedroom. Upon entering the bedroom the officers observed a wooden jewelry box similar to the one that the Fosters reported missing. The wooden box was open and the officers observed a large amount of jewelry and coins in the box.

J.P. was asked and agreed to go to the police station with his mother. After being given a *Miranda* warning, J.P. made a full statement implicating G.J., M.E. and the appellant, A.J.M., in the burglary.

The next day A.J.M. was questioned about his involvement in the Foster burglary. After waiving his *Miranda* rights, he admitted committing the burglary and taking the jewelry.

Appellant appeals his conviction on three grounds: (1) that the search warrant affidavit was insufficient to establish probable cause to believe that the fruits of the crime would be located at J.P.'s house; (2) that some of the underlying information was stale; and (3) that since the confession was obtained only after the illegal search, it should also be suppressed.

There is the threshold question of whether appellant has "standing" under the Fourth Amendment to make the challenge. The trial court only addressed the validity of the search as it pertained to appellant. The issue of standing was not briefed by either party or considered by the trial court.

## ISSUE

Does appellant have "standing" to object to the search of a co-defendant's home, and to which appellant had no lawful right of ownership or possession?

## ANALYSIS

The "standing" question must be resolved before permitting appellant to contest the search. If he has no standing, the validity of the warrant need not be addressed.

The very wording of the Fourth Amendment seems to provide the answer. It states, in relevant part, that "[t]he right of

the people to be secure in *their* persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." (emphasis added). The Amendment says nothing about any right to be secure against the search and seizure of *someone else's* person, house, papers, or effects.

The history of "standing" in search and seizure cases is a long one. For our purposes, the applicable standard was announced in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) where the court adopted the criterion articulated in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) which is whether the person claiming the protection of the Fourth Amendment "has a legitimate expectation of privacy in the invaded place." This standard was adopted in *State v. Tungland*, 281 N.W.2d 646 (Minn. 1979); *State v. Hodges*, 287 N.W.2d 413 (Minn.1979); and *State v. Guy*, 298 N.W.2d 45 (Minn.1980).

The *Rakas* Court emphasized that Fourth Amendment rights are personal ones that may not be asserted vicariously. Drawing then on *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) the Court concluded that "[a] person who is aggrieved by an illegal search and seizure *only through the introduction of damaging evidence secured by a search of a third person's premises or property* has not had any of *his* Fourth Amendment rights infringed." (Emphasis added). *Rakas*, 439 U.S. at 134, 99 S.Ct. at 425.

The question was not really one of standing, said the Court, but rather of the "purview of substantive Fourth Amendment law...." *Id.* at 140, 99 S.Ct. at 428.

The legitimacy of one's expectation of privacy is in large measure a function of its reasonableness, and that, in turn, is determined to some extent by the elements of time, place and circumstance.

Here, we have no doubt that appellant had no reasonable expectation of privacy in his co-defendant's parents' home.

This is not an expectation that the Constitution was ever intended to protect.

## DECISION

Appellant was not deprived of any constitutionally protected right by the search of the house where his co-defendant lived. His confession following the search and the confession of J.P. was in all respects legally obtained and valid. The trial court is affirmed.