## In the Matter of the WELFARE OF A.J.M.

### No. C4–83–1926.

Court of Appeals of Minnesota.

Sept. 11, 1984.

See also, Minn.App., 348 N.W. 2d 379.

William R. Kennedy, Hennepin County Public Defender, David Knutson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Johnson, Hennepin County Atty., Paul R. Jennings, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by SEDGWICK, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

On May 22, 1984 the first opinion was issued on this matter by the court of appeals, 348 N.W.2d 379. That opinion held that appellant A.J.M. did not have standing to question the validity of a search warrant, and affirmed the trial court order finding appellant delinquent. On July 27, 1984 the Minnesota Supreme Court remanded the matter for a decision on the issue raised by the appeal. We now address that issue.

This is an appeal from an order finding the appellant, a juvenile, delinquent. Ap-

pellant was charged by petition with burglary and theft over $150. The petition was supported by evidence obtained as a result of a search warrant. Appellant's counsel moved to suppress the physical evidence seized as the fruits of an illegally warranted search. The motion was denied and appellant was found guilty. We affirm.

## ISSUE

Is a supporting affidavit for a search warrant containing a citizen informant tip as much as eleven days old sufficient to establish probable cause for a search warrant?

## FACTS

On July 7, 1983 the Foster residence at 5820 West Broadway, Crystal, was burglarized while the Fosters were on vacation. A large amount of coins and jewelry was taken. J.P., a teenager who lived down the street from Fosters, learned the Fosters were on vacation from the victim's son, Greg. J.P. told Greg Foster he intended to burglarize the Foster home. Mrs. Foster made a statement to the police that whoever did the burglary was familiar with the home. J.P. had been over to the house many times before.

On July 18, 1983 a concerned citizen reported to police an argument she overheard between J.P. and his mother regarding stolen jewelry. J.P.'s mother was overheard stating that she wanted the stolen goods removed from the house immediately.

Based on this information, the police immediately drafted a search warrant to search the house where J.P. lived. The police informed J.P.'s mother that they had a search warrant to search for coins and jewelry and a large jewelry box. She stated that the items could be found in the northwest bedroom which was occupied by J.P. Upon entering the bedroom the officers observed a wooden jewelry box similar to the one that the Fosters reported missing. The wooden box was open and the officers observed a large amount of jewelry and coins in the box.

J.P. was asked and agreed to go to the police station with his mother. After being given a *Miranda* warning, J.P. made a full statement, naming G.J., M.E. and the appellant herein, A.J.M., as committing the burglary.

On July 19, 1983, A.J.M. was questioned about his involvement in the Foster burglary. After waiving his *Miranda* rights, he admitted committing the burglary and taking the jewelry.

## ANALYSIS

Appellant claims that (1) the search warrant affidavit was insufficient to establish probable cause to believe that the fruits of the crime would be located at J.P.'s house; (2) some of the underlying information was stale; and (3) since the confession was obtained only after the illegal search, it should also be suppressed.

The affidavit in support of the July 18, 1983 warrant states in part:

On 7/18/83, a concerned citizen informed the Crystal Police that she had overheard J.P. arguing with his mother about some stolen jewelry and heard J.P.'s mother state that she wanted the jewelry removed from their home immediately, because it was stolen and she did not want it around. This citizen also heard J.P. tell his mother how he and a party named G.J. entered a home and stole the jewelry and a stereo.

Probable cause exists that the jewelry from the Foster burglary is currently being kept at the home of J.P. A warrant is requested to search these premises and recover the loss listed in this warrant.

Appellant claims that the affidavit lacked probable cause for the issuance of a search warrant because the overheard conversation could have occurred on July 7th when the burglary occurred, making the information as much as eleven days old, or on July 18, 1983, on the date it was reported to police.

■ It is clear from the federal case law that no magical number of days will validate or invalidate information. Magistrates must apply "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

■ In the present case, the jewelry and coins were, according to the citizen information, being kept in J.P.'s bedroom. They were the subject of an argument between the boy and his mother who was upset at having stolen goods in her house and wanted them taken out. A reasonable officer given that information from a concerned citizen could reasonably conclude that (1) the questioned conversation was recent in nature, and (2) because of the size and nature of the stolen property, there was probable cause to believe the goods were still on J.P.'s premises. Even if the information was eleven days old, there is no body of either federal or state case law which would support a finding, as a matter of law, that eleven days was too long to support the issuance of a search warrant where stolen property was concealed in a home.

Appellant's second contention is that the designation of the informant as a "concerned citizen" is not sufficient to establish the credibility of the source or the reliability of her information.

As recited in the affidavit for the search warrant, the totality of the circumstances on which the police relied to obtain a warrant were as follows:

(1) Mrs. Foster, the victim, said that a friend of her son's told him that he would be breaking into their house while they were on vacation;

(2) The mother knew the friend as "J.", a black male who lived a few blocks away. When the officer, who was familiar with an individual matching this description, asked if this was J.P., she answered in the affirmative;

(3) J.P. had the opportunity to commit the burglary since he knew that the Fosters would be on vacation;

(4) Mrs. Foster suspected J.P. because he had been to their house on previous occasions, and it appeared that whoever did the burglary knew where the jewelry was;

(5) J.P. said that he would break into the Foster's home while they were on vacation and that it would be easy;

(6) A concerned citizen called the police on July 18, 1983 informing them that she had overheard an argument between J.P. and his mother regarding stolen jewelry. J.P.'s mother stated she wanted the jewelry removed immediately because it was stolen and she didn't want it around;

(7) The citizen heard J.P. say how he and a friend entered a home and stole the jewelry.

■ As this court said in *Hanson v. State*, 344 N.W.2d 420 (Minn.Ct.App.1984):

The standard for probable cause stated by the United States Supreme Court in *Illinois v. Gates*, [462] U.S. [213], 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), is accurately paraphrased in the Minnesota Judge's Criminal Benchbook, 1–4, (1983 Supp.) as follows:

The test of probable cause is met if the affidavit, interpreted in a common sense and realistic manner, sets forth competent evidence sufficient to lead a reasonably prudent person to believe that there is a basis for the search or that the articles sought are located at the place to be searched. There must be sufficient underlying facts so that the magistrate may draw his own conclusions of whether probable cause exists.

\*     \*     \*     \*     \*     \*

The *Gates* court described the duty of the magistrate:

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and the "basis of knowledge" of per-

sons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place.

103 S.Ct. at 2332 (emphasis added).

*Id.* at 423–424.

There is substantial independent corroboration in the affidavit of the citizen's statements. Mrs. Foster knew J.P. had been to the house and was familiar with its contents. Greg Foster told J.P. they would be on vacation and J.P. said he would break into the house. The connection between the burglary and the belief that the stolen goods would be located in J.P.'s house occurred on July 18 when the concerned citizen relayed to the officers the conversation she overheard.

## DECISION

Following the common sense, totality of the circumstances approach, the affidavit would lead a reasonable person to conclude that there was a fair probability that the stolen items would be located at J.P.'s home. The trial court properly admitted evidence seized pursuant to the warrant.

Affirmed.