**STATE of Minnesota, Appellant,**

v.

**Clarence Felton CHAMPION, Respondent.**

**No. C8–98–2145.**

Court of Appeals of Minnesota.

May 11, 1999.

---

Mike Hatch, Attorney General, St. Paul, and Amy Klobuchar, Hennepin County Attorney, Beverly J. Benson, Assistant County Attorney, for appellant.

Keith M. Ellison, Hassan Reed, Ltd., Minneapolis, for respondent.

Considered and decided by SHORT, Presiding Judge, PETERSON, Judge, and SHUMAKER, Judge.

## OPINION

SHORT, Judge.

On August 24, 1998, the State of Minnesota charged Clarence Felton Champion with first-degree possession of a controlled substance in violation of Minn.Stat. §§ 152.021, subds. 2(1), 3(a), 609.101, subd. 3 (1998). On appeal from the trial court's suppression order, the state argues Champion lacks standing to contest the warrantless search of another person's mailbox. Champion argues the state waived its right to challenge the trial court's order. We reverse and remand.

## FACTS

On August 13, 1998, Minneapolis police executed a warrant at 1000 Logan Avenue North in Minneapolis. After discovering a firearm and crack cocaine on the premises, officers arrested the home's occupant ("informant") for possession. At the police station, the informant named Clarence Felton Champion as her drug supplier. The informant told police that Champion made regular, unannounced deliveries to her home in the morning, came into her house to cook the powder cocaine, and then left the drugs for the informant to distribute.

Based on this information and statements from additional sources, police obtained a booking photograph of Champion and set up surveillance of the informant's house on the morning of August 20, 1998. Champion did not show up that morning, but the informant called the police the next day to tell them Champion was on his way to her house to make a delivery. In response, Officer Jeffrey Jindra, along with two other officers, immediately drove to the informant's house. As Officer Jindra approached the informant's address, he noticed a black Jeep parked in front of the informant's house and observed Champion walking up the step to the house with his right hand clenched. Champion looked around, opened the house's mailbox, placed his right hand in the mailbox, removed it and walked back toward the street.

When Champion neared the black Jeep, the officers arrested him, searched the informant's mailbox and discovered two plastic bags containing a white, powdery substance later identified as 51.5 grams of cocaine. The state charged Champion with first-degree possession of a controlled substance. During a Rasmussen hearing, Champion argued the officers did not have probable cause for his arrest and moved to suppress all evidence resulting from the arrest. On October 12, 1998, the trial court granted Champion's motion. Two days later, the state filed a motion for reconsideration, arguing Champion lacked standing to contest the search of the informant's mailbox. The trial court denied the state's motion.

## ISSUES

I. Did the state waive its right to challenge the trial court's suppression order?

II. Did the warrantless search of the informant's mailbox violate Champion's protected interests under the Fourth Amendment?

## ANALYSIS

▉ A suppression order only will be reversed if the state demonstrates clearly and unequivocally that the trial court erred in its judgment and, absent reversal, the error will critically impact the trial. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987); *see State v. Ronnebaum*, 449 N.W.2d 722, 724 (Minn.1990) (defining "critical impact"). In determining whether the trial court erred, we review the evidence de novo. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992).

### I.

▉ As a preliminary matter, Champion argues the state waived its right to challenge the trial court's suppression order. But a waiver is an intentional relinquishment of a known right made apparent from the disclosed facts. *Citizens Nat'l Bank v. Mankato Implement, Inc.*, 441 N.W.2d 483, 487 (Minn.1989) (citing *Hauenstein & Bermeister, Inc. v. Met–Fab Indus., Inc.*, 320 N.W.2d 886, 892 (Minn. 1982)). Although the state agreed during the Rasmussen hearing that Champion's motion to suppress would either result in an appeal or dismissal, it never agreed to forego raising further defenses of the drug seizure, nor did it confer with Champion regarding such a "stipulation." Moreover, Champion concedes the trial court never put any restrictions on what either party could argue, and the trial court noted in its order denying the state's motion for recon-

sideration that neither party mentioned or argued standing before the trial court.

Because the state never stipulated to or even discussed not raising further defenses at the Rasmussen hearing, we conclude it did not waive its right to challenge Champion's standing. Although it would have been more efficient to raise this issue during the Rasmussen hearing, the state properly challenged Champion's standing by filing a motion for reconsideration two days after the trial court's suppression order. *See State v. Wollan*, 303 N.W.2d 253, 254 (Minn.1981) (noting general rule is if one files motion for rehearing or similar motion after time limit for filing notice of appeal has expired, then filing of motion does not extend time with which to appeal); *see also State v. Reynolds*, 578 N.W.2d 762, 764 (Minn.App.1998) (concluding standing issue properly presented to trial court in pretrial motion for reconsideration following Rasmussen hearing).

## II.

■ A criminal defendant must show that a search or seizure violated his or her own legitimate expectation of privacy before successfully challenging the search or seizure under the Fourth Amendment. *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978); *State v. Richards*, 552 N.W.2d 197, 204 (Minn.1996). The question before us is whether an individual can have a legitimate privacy expectation in another person's mailbox.

■ A legitimate privacy expectation is not simply a "high hope" for privacy. *State v. Kenny*, 224 Neb. 638, 399 N.W.2d 821, 824 (1987) (stating " 'high hopes' do not * * * constitute a 'reasonable expectation of privacy' "). Rather, a privacy expectation is legitimate when a defendant's subjective privacy expectation in the area searched or the item seized is one that society is prepared to recognize as reasonable. *Rakas*, 439 U.S. at 143 n. 12, 99 S.Ct. at 430 n. 12; *State v. Tungland*, 281 N.W.2d 646, 650 (Minn.1979); *see Rawl-*

*ings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980) (noting burden is on party seeking suppression to show his/her Fourth Amendment rights were violated).

Based on the practice of leaving papers or packages in another person's mailbox with the reasonable expectation that only that person will retrieve these items, Champion argues he has a legitimate privacy expectation in the informant's mailbox. But we conclude this expectation does not serve a valuable function in society. Although it is common for people to use mailboxes as drop-off points, it is also common for government officials to open mailboxes to deliver the mail, or leafletters to drop fliers into mailboxes. *See United States v. Lewis*, 738 F.2d 916, 919–20 n. 2 (8th Cir.1984) (noting defendant had every expectation that government officials would regularly open the box to deliver mail in concluding defendant lacked standing to contest search of own mailbox). Moreover, it is a violation of federal law to obstruct the passage of mail by using a mailbox for purposes unrelated to the delivery of U.S. mail. *See* 18 U.S.C. § 1701 (1994) (prohibiting knowing or willful obstruction of passage of mail); *see also* 18 U.S.C. §§ 1705 (1994) (stating any person who willfully or maliciously breaks open mailbox or defaces or destroys any mail will be fined or imprisoned not more than three years), 1725 (1994) (imposing fine on any individual who deposits mailable matter with intent to avoid postage into any mailbox). Thus, not only is it unreasonable for an occupant to expect protection of his or her mailbox from outside intrusion, but protection from such intrusion is also not a societal expectation.

■■ Even if it is reasonable to expect a mailbox to be accessed only by its owners, this expectation cannot flow vicariously to third parties. *See Richards*, 552 N.W.2d at 204 (concluding defendant could not vicariously assume corporation's Fourth Amendment rights); *Rakas*, 439

U.S. at 133, 136–37, 99 S.Ct. at 425, 427 (noting Fourth Amendment rights are personal because granting standing to defendant to assert violation of another person's constitutional right gives rise to substantial administrative difficulties). A third party cannot reasonably expect privacy in another person's mailbox without some connection to that box. *See Richards*, 552 N.W.2d at 204 (recognizing courts require some nexus between defendant and area searched or item seized); *Reynolds*, 578 N.W.2d at 765 (recognizing standing may be based on person's connection to premises); *see also* Stephen P. Jones, *Reasonable Expectations of Privacy: Searches, Seizures, and the Concept of Fourth Amendment Standing*, 27 U. Mem. L.Rev. 907, 922 (1997) (noting individual must have some right to exclude others to establish privacy interest). To conclude otherwise protects a third party's access to an occupant's mailbox over an occupant's own right of privacy.

Champion did not own or even have permission to use the informant's mailbox. *See Rakas*, 439 U.S. at 143 n. 12, 99 S.Ct. at 430–31 n. 12 (noting one who owns, lawfully possesses, or controls property will likely have a legitimate expectation of privacy); *Richards*, 552 N.W.2d at 204 (recognizing one controlling factor in determining Fourth Amendment standing is relationship between property possessor and person alleging privacy interest in property). Instead, he only delivered drugs to the informant by bringing them into her home and leaving them with her to distribute. Champion also knew the mailbox would be accessed by government officials delivering mail, yet took no precautions to secure the mailbox when delivering the drugs. *See Rakas*, 439 U.S. at 153, 99 S.Ct. at 435 (examining whether defendant took normal precautions to seek privacy).

 Given these facts, we conclude Champion did not have a legitimate privacy expectation in the informant's mailbox. *See In re Welfare of A.J.M.*, 348 N.W.2d

379, 381 (Minn.App.1984) (noting reasonableness of legitimate privacy expectation determined by time, place, and circumstance), *review denied* (Minn. July 27, 1984). Moreover, because Champion denies ownership of the drugs, we also conclude he abandoned whatever privacy interest he had in the mailbox's contents. *See United States v. Hoey*, 983 F.2d 890, 892–93 (8th Cir.1993) (noting abandonment depends on whether person intended to relinquish reasonable expectation of privacy); *United States v. Nordling*, 804 F.2d 1466, 1470 (9th Cir.1986) (interpreting denials of ownership to objectively demonstrate intent to abandon property). The trial court erred in concluding the search of the informant's mailbox and drug seizure violated Champion's Fourth Amendment rights.

## DECISION

The state did not waive its right to challenge the trial court's pretrial suppression order. The search of the informant's mailbox did not violate Champion's Fourth Amendment rights.

**Reversed and remanded.**