J-S02045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY BELL | : | |
| | : | |
| Appellant | : | No. 3055 EDA 2016 |

Appeal from the Judgment of Sentence September 6, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009324-2014

BEFORE:   BOWES, J., NICHOLS, J., and RANSOM*, J.

CONCURRING MEMORANDUM BY RANSOM, J.:          **FILED JUNE 28, 2018**

Although I agree with the majority that Appellant's judgment of sentence should be affirmed, I disagree with the majority's analysis in many respects.  First, it is improper to reach the question of whether exigent circumstances existed without first establishing that a defendant had a reasonable expectation of privacy in the area being searched.  Second, the question of whether this Appellant had a reasonable expectation of privacy in the location being searched – *i.e.*, his unlocked, outdoor mailbox -- was repeatedly broached by the parties, and, thus, the majority's failure to address it is in error.  Third, I conclude that Appellant had no reasonable expectation of privacy in his unsecured, outdoor mailbox, and, thus, the question of whether law enforcement needed a warrant or an exception to the warrant requirement, such as exigent circumstances becomes moot.  Finally, assuming (but not conceding) that Appellant did have a reasonable expectation of

_____
\*   Retired Senior Judge assigned to the Superior Court.

privacy in his mailbox, the facts of this case do not constitute exigent circumstances.

### Reasonable Expectation of Privacy Must Be Established Before Question of Exigent Circumstances Can be Considered

The constitutional protections against unreasonable searches and seizures extend to one's person, house, writings, and effects and to those zones or areas in which a person has a reasonable or justified "expectation of privacy." *Commonwealth v. Viall*, 890 A.2d 419, 421-23 (Pa. Super. 2005). If there is no reasonable expectation of privacy, then the search and seizure will not be deemed "unreasonable" and thus unconstitutional, even when probable cause is lacking or a warrant was not obtained. *Commonwealth v. Edwards*, 874 A.2d 1192, 1195 (Pa. Super. 2005).

As the Commonwealth itself suggested in its brief, Commonwealth's Brief at 6-7, the question of whether exigent circumstances existed cannot be considered until after a reasonable expectation of has been established. *Commonwealth v. Peterson*, 636 A.2d 615, 618 (Pa. 1993).

### The Parties Sufficiently Broached the Question of Whether Appellant Had a Reasonable Expectation of Privacy in His Unsecured, Outdoor Mailbox

While I agree with the majority that *Commonwealth v. Enimpah*, 106 A.3d 695 (Pa. 2014), is controlling, I diverge from the majority in both its interpretation and application of this case. The majority states that "the Commonwealth generally bears the initial burden of placing at issue the

defendant's lack of a reasonable expectation of privacy." Majority Mem. at 1 (citing **Enimpah**, 106 A.3d at 702).

However, according to **Enimpah**, 106 A.2d at 701, what the Commonwealth bears in the context of a motion to suppress evidence is the initial burden of **production**[1] – *i.e.*, the Commonwealth bears the initial burden of **producing evidence** of a defendant's lack of a reasonable expectation of privacy – not of "plac[ing] Appellant's expectation of privacy in the mailbox at issue." Majority Mem. at 1.

The "court may, indeed, treat the defendant's privacy interest as a 'threshold' or 'preliminary' matter." **Enimpah**, 106 A.2d at 701-02. "[I]f the evidence of the Commonwealth, the party with the burden of production, shows the defendant lacked such a privacy interest," the Commonwealth "need prove no more." **Id.** at 701-02. "As it relates to the parties' presentation of evidence, our cases and the Rules of Criminal Procedure make clear that the Commonwealth has the burden of production, to give the court evidence allowing that conclusion." **Id.** at 702.

Here, Appellant placed his reasonable expectation of privacy at issue during the suppression hearing in September 2016, when Defense Counsel stated: "[T]o me, the question is: Does a person have a reasonable expectation of privacy in their identifiable mailbox?" Notes of Testimony

---

[1] This burden of production is distinct from the burden of persuasion.

(N. T.), 9/6/16, at 38-39; *see also id.* at 5, 43-46 (discussion of reasonable expectation of privacy).

The Commonwealth was therefore compelled to present evidence in support of its position that Appellant's constitutional rights were not violated.[2] *See Enimpah*, 106 A.3d at 703. Here, the evidence presented by the Commonwealth was that a police officer opened the lid of and looked inside an outdoor mailbox that had no lock, that was not otherwise secured, and that was labelled with the home address given to the officer by Appellant. N. T., 9/6/16, at 9-14, 23, 25, 29, 31-33; Trial Court Opinion (TCO), 5/1/17, at 3.

As the Commonwealth produced some evidence of Appellant's lack of a reasonable expectation of privacy, *Enimpah*, 106 A.3d at 701, our first consideration therefore must be whether the Commonwealth presented sufficient evidence to satisfy it burden of production to show that Appellant had no reasonable expectation of privacy in his mailbox, which was not locked and was easily subject to being opened by anyone who was interested in its

---

[2] The Commonwealth renews the issue of Appellant's reasonable expectation of privacy in its brief to this Court by asserting that Officer Jean's "minimally invasive step" of "looking inside [Appellant]'s unlocked mailbox . . . did not infringe [Appellant's] constitutional rights." Commonwealth's Brief at 6.
In the alternative, the Commonwealth argues that, "[t]o the extent the policy infringed any privacy interest defendant had in the unlocked mailbox, by doing no more than a postal officer would have done on a daily basis, the police reasonably sought . . . to protect the residents of the neighborhood by locating [Appellant]'s gun." *Id.* at 6 & 7; *see also id.* at 11-12.

contents.[3]  *Id.* at 702 ("in terms of the court's review, it need go no further if it finds" no proof of "a reasonable expectation of privacy").

### Appellant Did Not Have a Reasonable Expectation of Privacy In His Unsecured, Outdoor Mailbox

I have uncovered no Pennsylvania case law on this issue.  I thus believe that this appeal is a case of first impression for our Pennsylvania courts.  However, the question of whether an individual has a reasonable expectation of privacy in his or her own mailbox has been considered by other jurisdictions.  "Although we are not bound by those decisions," "we may use decisions from other jurisdictions for guidance to the degree we find them useful and not incompatible with Pennsylvania law."  *Newell v. Montana W., Inc.*, 154 A.3d 819, 823 & n.6 (Pa. Super. 2017) (citation and internal quotation marks omitted).  Upon my review, it is clear that a majority of jurisdictions that have considered this question have held that a person has no reasonable expectation of privacy in an unlocked, accessible mailbox.  *United States v. Stokes*, 829 F.3d 47 (1st Cir. 2016); *United States v. Hinton*, 222 F.3d 664 (9th Cir. 2000); *United States v. Osunegbu*, 822 F.2d 472 (5th Cir. 1987); *United States v. Lewis*, 738 F.2d 916 (8th Cir. 1984); *State v. Champion*, 594 N.W.2d 526 (Minn. Ct. App. 1999); *Gabriel v. State*, 290 S.W.3d 426 (Tex. Ct. App. 2009); *see Parker v. State*, 112 So.2d 493 (Ala. Ct. App.

_____

[3] I note that I would limit my analysis to outdoor, unlocked mailboxes.  I would not extend my analysis to address whether a defendant would have a reasonable expectation of privacy in an indoor or locked mailbox.

1959); ***contra People v. Lilly***, 211 A.D.2d 428 (N.Y. App. Div. 1995); ***but see Commonwealth v. Garcia***, 612 N.E.2d 674 (Mass. App. Ct. 1993).

The Minnesota Court of Appeals wrote in ***State v. Champion***, 594 N.W.2d 526, 529 (Minn. Ct. App. 1999), that "not only is it unreasonable for an occupant to expect protection of his or her mailbox from outside intrusion, but protection from such intrusion is also not a societal expectation." The Minnesota Court of Appeals relied upon three federal statutes controlling the mail: 18 U.S.C. § 1701, prohibiting knowing or willful obstruction of the passage of mail; 18 U.S.C. § 1705, stating that any person who willfully or maliciously breaks open a mailbox or defaces or destroys any mail will be fined or imprisoned for not more than three years; and 18 U.S.C. § 1725, imposing a fine on any individual who deposits mailable matter into a mailbox with intent to avoid postage. Based upon these three statutes – but particularly Section 1701 – the Minnesota Court of Appeals observed that "it is a violation of federal law to obstruct the passage of mail by using a mailbox for purposes unrelated to the delivery of U.S. mail." ***Champion***, 594 N.W.2d at 529. The Minnesota Court of Appeals hence concluded that, since Champion knew that the mailbox would be accessed by government officials delivering mail but took no precaution to secure the mailbox when depositing contraband – in his case, drugs -- he had no reasonable expectation of privacy in the mailbox, and any search of the mailbox was proper. ***Id.*** at 530.

Analogously, here, Appellant knew that a mailbox could be accessed by government officials delivering mail but took no precaution to secure his

mailbox when he hid his firearm inside. Following the analysis of **Champion**, it is unreasonable for Appellant to expect protection of his mailbox from outside intrusion, he had no reasonable expectation of privacy in his mailbox, and the search of his mailbox was proper. **Id.** at 529-30.[4]

Turning to the federal courts, I note that, in **United States v. Lewis**, 738 F.2d 916, 918-19 & n.2 (8th Cir. 1984), the Eighth Circuit considered whether the appellant, James Lewis, had a legitimate expectation of privacy in his unlocked mailbox that was accessible to the public after police had opened the mailbox without a warrant. After receiving a report that a credit card was being used fraudulently,

---

[4] In **Parker v. State**, 112 So.2d 493 (Ala. Ct. App. 1959), the appellant was accused of possessing prohibited liquors in a county where alcohol was prohibited. Specifically, a deputy found two pints of whiskey in the appellant's mailbox. **Id.** at 494. The Court of Appeals of Alabama stated: "We do not consider the mailbox as being located within the curtilage" of the appellant's "dwelling house." **Id.** However, the appellant's mailbox was located across a rural public road from his dwelling, not immediately in front of his home. **Id.** The Court of Appeals did not clarify whether it believed that a mailbox is never part of the curtilage of a house or if that appellant's circumstances were distinct, due to the unusual location of his mailbox on the opposite side of a public road from his house. **See id.** at 493-94. If a mailbox were never curtilage, then its owner would not be entitled to constitutional protection from warrantless searches of it. **See Commonwealth v. Brian Johnson**, 68 A.3d 930, 935 n.3 (Pa. Super. 2013) ("Our courts have extended the constitutional protection of the Fourth Amendment and Article 1, § 8 of the Pennsylvania Constitution to the curtilage of a person's home." (citation and internal brackets omitted)); **Commonwealth v. Simmen**, 58 A.3d 811, 815 (Pa. Super. 2012) ("Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." (citation omitted)).

> police discovered that some of the merchandise being purchased with this credit card was being delivered to a mailbox at 8342 Swartz Road, Kansas City, Kansas. Detective William C. Moore of the Kansas City, Missouri Police Department drove there and found a mailbox mounted in a two-gallon can filed with concrete, lying on the ground in a ditch, and in a state of disrepair. . . . Detective Moore then peered into the box to attempt to determine when mail was being picked up. On October 29, 1981, he opened the mailbox and found a Jackson County property assessment bill addressed to a David E. Woods.

*Id.* at 918. Detective Moore returned the bill to the mailbox. *Id.* Police then commenced surveillance on the mailbox and observed Lewis picking up and repairing the mailbox. *Id.* at 918, 921. After his arrest, "Lewis moved to suppress the evidence concerning the warrantless opening of the David Woods mailbox, additionally claiming that all subsequent search warrants, and therefore all evidence at trial, were fruit of this allegedly illegal search." *Id.* at 919. The Eighth Circuit "ha[d] no difficulty in concluding that Lewis lacked a legitimate expectation of privacy in the mailbox[,]" because "[h]e had every expectation that governmental officials would regularly open the box to deliver mail." *Id.* at 919 n.2. Applying that analysis to the current case, the search of Appellant's unlocked mailbox that was accessible to the public was also valid, because he would expect that government officials would regularly open the box to deliver mail.[5]

---

[5] Albeit that, unlike in the current case, Lewis's mailbox was located in a rural area and bore a false name, "David Woods," I find those distinctions to be inconsequential, because the crux of the Eighth Circuit's reasoning was that Lewis lacked a legitimate expectation of privacy in an object that government officials would regularly open to deliver mail. *Lewis*, 738 F.2d at 919 n.2.

Another useful case is **United States v. Osunegbu**, 822 F.2d 472, 474 (5th Cir. 1987), in which the Fifth Circuit upheld a warrantless search of a private post office box by postal inspectors. In its analysis, the Fifth Circuit noted that postal employees would often have to look at and move mail into and out of mailboxes. **Id.** at 480. For this reason, there is a minimal expectation of privacy as to the contents placed in a mailbox. **Id.**; **see also Gabriel v. State**, 290 S.W.3d 426, 432-33 (Tex. Ct. App. 2009) (applied the reasoning of **Osunegbu** to a postal box rented in a private facility, an UPS Store, and held that the trial court did not err in denying appellant's motion to suppress evidence seized therefrom by a detective in the county sheriff's office).

In what was a case of first impression, the First Circuit, in **United States v. Stokes**, 829 F.3d 47, 52 (1st Cir. 2016), also considered "whether a defendant can hold a reasonable expectation of privacy in a rented mailbox[.]"

> From 2008 to 2012, defendant-appellant Darren Stokes sent fraudulent invoices to thousands of businesses. Each invoice appeared to be sent by a legitimate trade association and directed the business to send membership dues to one of three addresses in Massachusetts where, unbeknownst to the business, Stokes received mail. Postal inspectors intercepted mailings to these addresses. After criminal charges were leveled against Stokes in the United States District Court for the District of Massachusetts, he moved to suppress the mailings as the product of an unreasonable search under the Fourth Amendment. The district court denied the motion to suppress[.]

*Id.* at 49.[6]  The First Circuit affirmed, holding that Stokes did not have "a legitimate expectation of privacy in the . . . P.O. Box." *Id.* at 52.

Although ***Osunegbu*** and ***Stokes*** involved post office boxes and not a private mailbox, I find their reasoning – *i.e.*, that postal employees regularly look at the inside of post office boxes so no warrant is needed to search one – applies equally to a private mailbox, which postal employees also look inside regularly.  For this reason, a private mailbox would also have a minimal expectation of privacy, and a warrant would not be required for other government officials, such as police officers, to search it.

Another case that is similar, albeit not directly on point, is ***United States v. Hinton***, 222 F.3d 664 (9th Cir. 2000), in which the Ninth Circuit considered whether an individual has an expectation of privacy in a parcel locker.  In ***Hinton***, the appellant rented a post office box, which was closed and locked from the outside but open and in plain view of postal employees. *Id.* at 667.  When the appellant received a package that was too large for his post office box, employees placed the package in a parcel locker and placed a key for the locker in his post office box.  *Id.*  The parcel locker was locked to the public, but a door at the back of the locker opened to employees without a key.  *Id.*  Postal employees could thus remove packages from their side without using a key.  *Id.* at 667-68.

---

[6] "Stokes pled guilty to 8 counts of wire fraud under 18 U.S.C. § 1343 and 7 counts of mail fraud under 18 U.S.C. § 1341." *Stokes*, 829 F.3d at 49.

The Ninth Circuit held that there "is no reasonable expectation of privacy in a parcel locker." *Hinton*, 222 F.3d at 675. The court explained: "The postal employees would have the right to move the packages whether the parcel locker has a back door facing the employee area or not, because the right to move the packages exists irrespective of a locker's enclosure." *Id.* at 676. Since the contents can be accessed by postal workers, "one may not claim an objectively reasonable expectation of privacy in a parcel locker." *Id.* Although the current matter involves a mailbox at a residence and not a post office box nor a parcel locker inside a post office, the access of postal workers to their contents remains the same. Therefore, following the logic of *Hinton*, *id.*, in the instant case, there would also be no reasonable expectation of privacy.

One case that arguably could be considered an exception to the conclusion of the majority of jurisdictions that found no reasonable expectation of privacy in a mailbox is *Commonwealth v. Garcia*, 612 N.E.2d 674 (Mass. App. Ct. 1993). In *Garcia*, the Massachusetts Appeals Court held that a warrantless search of a mailbox was unjustified, because the defendant had a reasonable expectation of privacy in a mailbox, even when he was not a tenant in that building. However, I believe that *Garcia* is distinguishable, because the mailbox was inside an apartment building and was locked. *Id.* at 676, 678-79. In the current appeal, Appellant's mailbox was outside and was unlocked. Thus, I conclude that *Garcia* is not persuasive.

- 11 -

The only jurisdiction that has considered this issue and held that a defendant has a reasonable expectation of privacy in his own mailbox is New York. The opinion rending this holding, **People v. Lilly**, 211 A.D.2d 428, 428 (N.Y. App. Div. 1995), states in its entirety:

> Order, Supreme Court, New York County (Nicholas Figueroa, J.), entered on or about June 28, 1994, which granted defendant's motion to suppress physical evidence and a postarrest statement, unanimously affirmed.
>
> Defendant's legitimate expectation of privacy in the mailbox *(see, **People v Whitfield**,* 81 NY2d 904; ***People v Wesley**,* 73 NY2d 351), and his resulting standing, were established by his assertion, in response to the officer's question, that the mailbox was his and that he resided in the corresponding apartment.
>
> The officer's contention that he feared for his safety lacked any objective basis *(cf., **People v Chin**,* 192 AD2d 413, ***lv denied*** 81 NY2d 1071; ***People v Marine**,* 142 AD2d 368, 370-371), as the court properly determined that defendant was seized, i.e., that there was a "significant interruption [of his] liberty of movement", when the officer, while standing in defendant's path and without first asking him to move, placed his hand on defendant's left shoulder to brush him aside in order to observe the contents of the mailbox *(see, **People v Bora**,* 83 NY2d 531, 534-535) and was unwarranted under the circumstances.

None of the cases cited therein – **Whitfield**, **Wesley**, **Chin**, **Marine**, and **Bora** – concerns the search of a mailbox.[7]

_____

[7] The New York Supreme Court, Appellate Division, upheld the validity of the search of a mailbox in two subsequent memorandum decisions.
In **People v. Merchant**, 258 A.D.2d 478, 478 (N.Y. App. Div. 1999) (memorandum), "the defendant challenge[d] the search of a mailbox which was not located in his residence and in which he claimed no possessory interest," even though "keys to the mailbox were found in his possession." Not only do the facts of **Merchant** distinguish it from the current matter, but

I find that New York's analysis of this issue is not an in-depth as in the other jurisdictions that have considered this question. I am wary of contradicting the majority of jurisdictions on the basis of the ruling of a minority of one.

Accordingly, based upon **Champion** and **Lewis** and in consideration of **Osunegbu**, **Gabriel**, **Stokes**, and **Hinton**, I conclude that a person has no reasonable expectation of privacy in his unlocked, outdoor mailbox.[8] Here,

_____

the New York Supreme Court, Appellate Division, concluded that the defendant had no standing to challenge the search of the mailbox and never reached the question of whether the defendant had a reasonable expectation of privacy.

The New York Supreme Court, Appellate Division, did reach that question in **People v. Scott**, 273 A.D.2d 76, 76 (N.Y. App. Div. 2000) (memorandum decision), while patrolling the lobby of a building in a housing project, two police officers saw the defendant smoking marijuana and arrested him. Upon searching the defendant, the officers discovered a set of keys. **Id.** The defendant denied "any personal connection to the building and any connection between the keys and the building." **Id.** An officer tried the keys in the building's mailboxes, and, upon opening one of the boxes, discovered cocaine and PCP. **Id.** The trial court granted the defendant's motion to suppress the drugs, but the Supreme Court, Appellate Division, held that "[m]ere possession of the mailbox key" did not invest the defendant "with a reasonable expectation of privacy in the mailbox." **Id.**

[8] However, an individual has a privacy interest in the contents of his or her mail. **Stokes**, 829 F.3d at 52 (citing **United States v. Jacobsen**, 466 U.S. 109 (1984); **Ex parte Jackson**, 98 U.S. 727 (1877); **United States v. Barnette**, 375 F.3d 10 (1st Cir. 2004), **judgment vacated on other grounds by** 543 U.S. 1181 (2005)) ("Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy. Yet a defendant has no reasonable expectation of privacy in the outside of mail . . ." (internal quotation marks omitted)). Thus, the holding of this opinion does not permit law enforcement to open mail, such as sealed envelopes or packages, without a warrant or a clearly recognized exception to the warrant requirement.

- 13 -

the Commonwealth gave the trial court evidence that police had searched Appellant's unlocked, outdoor mailbox, N. T., 9/6/16, at 9-14, 23, 25, 29, 31-33; TCO at 3; it thus fulfilled its burden of production by providing sufficient evidence for the court to determine whether Appellant had a reasonable expectation of privacy. *Enimpah*, 106 A.3d at 702. As no reasonable expectation of privacy exists in an unlocked, outdoor mailbox and as the Commonwealth produced evidence that the search at issue was of an unlocked, outdoor mailbox, *id.*, Appellant had no privacy interest in the area that was searched. Hence, the search that lead to the discovery of Appellant's firearm cannot be deemed "unreasonable" and thus unconstitutional. *See Edwards*, 874 A.2d at 1195.

To be clear, I would conclude that no warrant was required to search Appellant's unlocked, outdoor mailbox, and, for that reason, I thus concur that Appellant's motion to suppress the firearm seized from Appellant's unlocked, outdoor mailbox was properly denied. *See Freeman*, 150 A.3d at 34–35. As I would hold that Appellant had no reasonable expectation of privacy in his own unlocked, outdoor mailbox, I do not need to reach the issue of whether exigent circumstances existed to justify a warrantless search. *Peterson*, 636 A.2d at 618.

### No Exigent Circumstances Existed

The trial court, however, assumed that Appellant had "reasonable expectations of privacy in his own mailbox," TCO at 7, without further analysis

and without any citation to case law. Consequently, the trial court denied Appellant's motion to suppress based upon exigent circumstances. *Id.* at 6-7 (quoting ***Commonwealth v. Stewart***, 740 A.2d 712, 717-18 (Pa. Super. 1999) (defining exigent circumstances)). The majority also is "of the view that the trial court properly denied Appellant's motion to suppress based on exigent circumstances." Majority Mem. at 3 (footnote omitted) (citations omitted).

During the suppression hearing, Defense Counsel argued that police could have had an officer secure Appellant's mailbox, and, "[i]f they thought there was probable cause or reason to believe it, go get a warrant." N. T., 9/6/16, at 42. In his brief to this Court, Appellant also argued:

> The Appellant also argues that there were no exigent circumstances to open up the mailbox without a warrant. The Commonwealth argued that there was a school nearby.
>
> However, it was a closed mailbox which was secured by a police officer. The police officer testified that he did not search an unsecured car and did not appear to be concerned.

Appellant's Brief at 8.

As the trial court and the majority both rely solely on the theory that exigent circumstances existed and as Appellant preserved this issue, I therefore feel compelled to explain why I would disagree with the trial court's and the majority's rationale. TCO at 6-7; Majority Mem. at 3. "This Court is not bound by the rationale of the trial court, and we may affirm the trial court on any basis." ***Commonwealth v. Williams***, 73 A.3d 609, 617 n.4 (Pa. Super. 2013) (citing ***In re Jacobs***, 15 A.3d 509, 509 n.1 (Pa. Super. 2011)).

- 15 -

Exigent circumstances are an exception to the warrant requirement, excusing the need for a warrant where "prompt police action is imperative" – *i.e.*, when the delay in obtaining a search warrant would result in personal injury or the loss of evidence. *Commonwealth v. Hakim Johnson*, 969 A.2d 565, 569 (Pa. Super. 2009) (citation omitted); *accord Schmerber v. California*, 384 U.S. 757 (1966). The classic examples of exigent circumstances are where someone is yelling for help or where a defendant is flushing drugs down the toilet. *See, e.g.*, *Commonwealth v. Potts*, 73 A.3d 1275, 1275, 1280 (Pa. Super. 2013) (when police arrived, they heard screaming and yelling from appellant's apartment; their warrantless entry and search was proper, as one exception to the warrant requirement "is when the police reasonably believe that someone within a residence is in need of immediate aid" (quoting *Commonwealth v. Galvin*, 985 A.2d 783, 795 (Pa. 2009)); *United States v. Fiasche*, 520 F.3d 694 (7th Cir. 2008) (after seeing police, defendant yelled "hold on," followed by "flushing sounds"; it was reasonable to conclude that drugs would have been flushed down the toilet in the time it would take to obtain a search warrant).

Here, there was no chance that the firearm, located in Appellant's mailbox, would have been destroyed by Appellant or that Appellant would have caused someone personal injury with the firearm. Appellant was with Officer Robin Song while Officer Joel Jean performed the search, so Appellant could not have destroyed the evidence. N. T., 9/6/16, at 25, 27. The firearm also would not have quickly been damaged by the elements from inside a

mailbox or otherwise lost. There is no suggestion that Appellant would flee, and, even if he did, he was not in the vicinity of the firearm, where he could grab it easily. *Id.* at 12-14, 24, 29-31.

As for Officer Jean's and the trial court's concern that a child from the local daycare may have found the firearm, if Officer Jean had probable cause that the firearm was in Appellant's mailbox, he could have secured the mailbox while another officer obtained a warrant. *See, e.g.*, *Commonwealth v. English*, 839 A.2d 1136, 1142 (Pa. Super. 2003) (concluding warrantless seizure of marijuana plants not justified, even though police claimed plants could be destroyed before search warrant could be procured, where officers could have secured the scene while a different officer obtained a warrant). As noted above, Appellant had raised this argument during the suppression hearing and in his brief to this Court. N. T., 9/6/16, at 42; Appellant's Brief at 8.

Even taking into account the most comprehensive list of factors that a court may consider when assessing the presence of exigent circumstances, which was cited by the majority, Majority Mem. at 3-4 n.4, those factors would weigh against finding exigent circumstances in the current action. That list of factors is:

> (1) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is a clear showing of probable cause; (4) whether there is a strong reason to believe that the suspect is within the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry is peaceable; (7) the timing of the entry; (8) whether there is hot pursuit of a fleeing

felon; (9) whether there is a likelihood that evidence will be destroyed if police take the time to obtain a warrant; and (10) whether there is a danger to police or other persons inside or outside of the dwelling to require immediate and swift action.

***Commonwealth v. Brian Johnson***, 68 A.3d 930, 937 (Pa. Super. 2013)***.*** In the current appeal, these factors count against finding exigent circumstances: at the time of Officer Jean's search, Appellant was not armed, obviously could not be inside the "premises" of the mailbox, did not have a likelihood of escape, was not fleeing, could not destroy evidence, and was not a danger to others.

In conclusion, there was **no emergency** that would allow for the finding of exigent circumstances. ***See Birchfield v. North Dakota***, 136 S. Ct. 2160, 2173 (2016) ("The exigent circumstances exception allows a warrantless search when an emergency leaves police insufficient time to seek a warrant."); ***Commonwealth v. Gatlos***, 76 A.3d 44, 56 (Pa. Super. 2013) ("exigent circumstances may provide an exception to the warrant requirement in what are essentially emergency situations created by those exigent circumstances"); ***see also Commonwealth v. Ritcher***, 791 A.2d 1181 (Pa. Super. 2002) (*en banc*).

"[A]ll decisions made pursuant to the exigent circumstances exception must be made cautiously, for it is an exception which by its nature can very easily swallow the rule unless applied in only restricted circumstances." ***Commonwealth v. Bostick***, 958 A.2d 543, 557 (Pa. Super. 2008) (quoting ***English***, 839 A.2d at 1141).

Neither the requisite danger nor potential for destruction of evidence existed that would qualify as such restricted circumstances requiring prompt police action.  **See Hakim Johnson**, 969 A.2d at 569; **Bostick**, 958 A.2d at 557.[9]

For the reasons explained above, I would affirm the judgment of sentence but on a different basis than both the trial court and the majority. Thus, I concur.

---

[9] The facts of this case also do not merit the recently-recognized "community caretaker" exception.  **Commonwealth v. Livingstone**, 174 A.3d 609 (Pa. 2017).  For this exception, the police have to be rendering aid or assistance and cannot be engaging in crime-solving activity.  **Id.** at 627-28 & n.12, 635. The current action fails on both accounts:  the police were not helping anyone, and they were specifically engaged in criminal investigation by searching for a weapon.