**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Richard SIMMEN, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 9, 2012.

Filed Dec. 11, 2012.

Michael S. Sherman, Pittsburgh, for appellant.

Kevin Francis McCarthy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., MUSMANNO, J., and ALLEN, J.

OPINION BY STEVENS, P.J.

This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Allegheny County after Appellant Richard Simmen was convicted of Driving under the Influence of Alcohol (DUI)[1] and Accidents Involving Damage to Unattended Vehicle or Property.[2] Appellant challenges the trial court's denial of his suppression motion. We affirm.

1. 75 Pa.C.S.A. § 3802(a)(1), (b).

2. 75 Pa.C.S.A. § 3745.

The trial court aptly summarized the factual background of this case as follows:

In the early morning hours of December 18, 2010, Officer Christian Guzzo of the McCandless Township Police Department responded to a call involving a motor vehicle accident at 8510 Winchester Drive, the home of Michael Hespelein. According to Mr. Hespelein, he heard a very loud crashing sound and, upon looking out the window, saw a dark object in his driveway and front yard. After going downstairs to get a better look, he realized the object was a car. Within three (3) minutes of hearing the crashing sound, Mr. Hespelein called 911 to report the accident. As he was on the phone with 911 and in the process of getting dressed to go outside, the car started, and the driver left the scene. Mr. Hespelein went outside to survey the damage done by the accident, observing that the retaining wall in his front yard had been knocked over, the railing on the stairway had been struck, and his mailbox had been knocked over. He also noticed that there were car parts scattered on his lawn.

Officer Christian Guzzo, a police officer with the Township of McCandless, arrived less than five minutes after Mr. Hespelein's 911 call, at approximately 1:10 a.m. In addition to the damage described by Mr. Hespelein, Officer Guzzo noted a dark red burgundy bumper in the driveway and tire tracks from a neighbor's yard, leading into Mr. Hespelein's retaining wall. He further noted that, although there was snow in the grassy areas, the roads were dry, and there was no precipitation.

After examining the bumper, Officer Guzzo observed tire marks coming out of Mr. Hespelein's driveway where the vehicle had left, as well as a trail of fluid in the center of the tire tracks. Officer Guzzo was able to follow the fluid trail in his patrol car. The trail ended in a driveway at 8465 Coventry Drive, a location approximately 1½ to two (2) miles from the Hespelein residence, in McCandless Township. The driveway of the Coventry Drive address was perpendicular to the street, and proceeded at a length of forty (40) to fifty (50) feet to the front of the home located at that address, where it ended in a garage. As Officer Guzzo observed the trail of fluid as it proceeded into the driveway, he also noted a burgundy-colored car in the driveway, approximately twenty (20) feet from the road. Officer Guzzo arrived at this location at 1:26 a.m., approximately fifteen (15) minutes after he had initially responded to the call at Winchester Drive.

Officer Guzzo walked up the driveway to attempt to contact the owner of the vehicle. As he did so, he observed that the burgundy car was leaking fluid from its front end and was missing a front bumper. The bumper missing from the vehicle in the driveway was consistent with the bumper that he had observed at the home of Mr. Hespelein. Officer Guzzo also saw that the driver's side airbag in the burgundy vehicle had been deployed.

Officer Guzzo approached the front door of the house at 8465 Coventry Drive and knocked several times on two (2) occasions before the door was opened by Carly Simmen. Officer Guzzo requested that Ms. Simmen put on a pair of shoes and exit the house to speak to him. At that time, Officer Guzzo saw [Appellant] sitting on the steps inside the front door of his home. Following his conversation with Ms. Simmen, Officer Guzzo was permitted to enter [Appellant's] home, where he encountered [Appellant].

Officer Guzzo noted a moderate odor of alcohol coming from [Appellant] and observed that he had bloodshot eyes and an abrasion on his nose, which was consistent with the deployed airbag. Officer Guzzo asked [Appellant] if he had been drinking that night, and [Appellant] replied that he had consumed a couple of drinks earlier. The officer did not note any alcohol near the person of [Appellant] as he spoke to him in his home. [Appellant] also said that he left the scene of the accident because the vehicle was drivable. Officer Guzzo determined that [Appellant] had been driving under the influence and took him into custody at 1:43 a.m.

Trial Court Opinion, 2/29/12, at 2–4 (citations omitted). Our review of the record shows that Appellant subsequently submitted to a Breathalyzer test at approximately 2:22 a.m., which indicated Appellant's blood alcohol level was 0.125.

After Appellant was charged with DUI and related offenses, Appellant filed a pretrial motion to suppress the evidence obtained from the officer's investigation. After an evidentiary hearing was held, the trial court denied Appellant's suppression motion. Appellant proceeded to a bench trial, in which the trial court convicted Appellant of the aforementioned offenses. The trial court subsequently sentenced Appellant to thirty days of Restrictive Intermediate Punishment, six months probation, and a $750 fine. Appellant filed a timely appeal and complied with the trial court's direction to file a Concise Statement of Matters Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

Appellant raises the following issues for our review on appeal:

A. WHETHER OR NOT THE POLICE OFFICERS INVESTIGATING A MINOR TRAFFIC VIOLATION INVOLVING $150.00 IN PROPERTY DAMAGE CIRCUMVENTED THE WARRANT REQUIREMENT BY MAKING A WARRANTLESS ENTRY ONTO APPELLANT'S PROPERTY AND INTO APPELLANT'S RESIDENCE?

B. WHETHER OR NOT THE POLICE OFFICERS UNLAWFULLY ENTERED APPELLANT'S RESIDENCE WITHOUT A WARRANT WHEN THERE WAS NO EXIGENCY PERMITTING THEIR ENTRY?

C. WHETHER OR NOT THERE WAS NO PROBABLE CAUSE TO ARREST APPELLANT BECAUSE HE SHOWED NO SIGNS OF IMPAIRMENT AND THE OFFICER FAILED TO CONDUCT FIELD SOBRIETY TESTING?

Appellant's Brief, at 4.

Our review of a trial court's denial of a suppression motion is guided by the following standard of review:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of

legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783–84 (Pa.Super.2012) (citations omitted).

■■■ Appellant claims the arresting officer unlawfully entered his property by walking up his driveway without a warrant. It is well established that "[a]bsent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1, [Section] 8 of the Pennsylvania Constitution." *Commonwealth v. Gibbs*, 981 A.2d 274, 279 (Pa.Super.2009). Our courts have extended this constitutional protection to the curtilage of a person's home by analyzing "factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." *Id.* at 279. "Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." *Commonwealth v. Fickes*, 969 A.2d 1251, 1256 (Pa.Super.2009).

In *Gibbs*, this Court found that officers were not required to have a warrant to enter the front porch of Gibbs's residence. Officers were conducting surveillance of Gibbs's residence and facilitated a controlled drug buy with a confidential informant in Gibbs's residence. Once the transaction occurred and one of the men involved in the sale was arrested after he drove away from the residence, the officers applied for a search warrant for Gibbs's residence. However, as the officers were concerned that evidence might be destroyed before the search warrant

issued, the officers entered Gibbs's front porch to knock on the front door in an attempt to distract the occupants of the house from destroying any contraband. Before they could knock, Gibbs opened the front door and officers observed a large quantity of U.S. currency and baggies which appeared to contain crack cocaine on the kitchen counter. The officers secured the residence while waiting for the search warrant to issue.

On appeal, this Court found Gibbs's front porch did not constitute curtilage in which Gibbs had a reasonable expectation of privacy. *Gibbs*, 981 A.2d at 280. Gibbs's front porch was an empty, unenclosed concrete slab that did not have a gate blocking entry to the porch. There were no signs warning against trespass or evidence that Gibbs prohibited the general public from accessing the porch. The porch was open to visitors and deliverymen, as officers observed a pizza deliveryman and suspected drug purchasers use the porch shortly before the police decided to approach Gibbs's front door. The *Gibbs* court found persuasive precedent of sister courts which held that police officers do not violate the Fourth Amendment by entering a porch that was "used by the general public." *Id.*

■■■ Likewise, in this case, we find that the officers did not violate the Fourth Amendment by walking up Appellant's driveway to observe Appellant's damaged car. We agree with the trial court's rationale supporting its finding that the driveway was not curtilage:

Based on the description of the driveway, and the location of the car on it, there was no evidence presented at the time of the suppression hearing to support an assertion that there was any expectation of privacy in the area. The driveway was in the front of the house, leading from the street to the garage

contained within the actual residence. The car was parked in plain view of the street on the driveway, within twenty (20) feet of the road. There was no evidence of signs warning against trespass on the driveway or that the driveway was gated or fenced or shielded from the view of the street in any way. In fact, it appears from the description of the house that access to the front door of the residence was made via the driveway. These facts certainly suggest that there could be no reasonable expectation of privacy in the area of the driveway.

Trial Court Opinion, 2/29/12, at 6–7 (citations omitted). As Appellant's driveway was accessible to the general public, we find Officer Guzzo viewed Appellant's vehicle from a lawful vantage point when he walked up Appellant's driveway, an area in which Appellant did not have a reasonable expectation of privacy.

We disagree with Appellant's assertion that this Court's decision in *Commonwealth v. Lee*, 972 A.2d 1 (Pa.Super.2009), requires us to find that his driveway constituted curtilage which Officer Guzzo needed a warrant to access. Similar to this case, the officers in *Lee* were investigating a hit and run accident in which they followed a trail of antifreeze fluid from the accident scene to Lee's driveway. However, it was not until the officers walked down Lee's driveway that they were able to see a truck parked behind his residence. The officers then walked behind Lee's residence and discovered the truck had front-end damage and its airbags had deployed.

Appellant misconstrues our holding in *Lee* as he asserts this Court found that the

officer's entry onto Lee's driveway was illegal. In actuality, this Court concluded that the officers' search *behind Lee's house* was unreasonable as Lee had a reasonable expectation of privacy in the area behind his residence where his truck was parked. *Id.* at 4. As the officers lacked exigent circumstances to investigate the curtilage of Lee's property, their search was unconstitutional. In contrast, the officers in this case were able to see Appellant's vehicle in the front driveway as they approached his residence. The officers had merely entered the driveway when they noticed that the vehicle's bumper was missing and its airbags had deployed. As Appellant did not have a reasonable expectation of privacy in his front driveway, the officers were permitted to enter his driveway to investigate.[3]

■ Appellant also claims Officer Guzzo made an illegal warrantless entry into his home when he knocked on the front door, spoke with Appellant's wife, and asked to see the person who had been driving the damaged vehicle parked in the driveway. The trial court found Officer Guzzo was permitted to enter Appellant's house without a warrant as Appellant's wife, Carly Simmen, gave her consent. Although as a general rule, warrantless searches unsupported by probable cause are unreasonable, our courts have recognized an exception when a third party consents to the search:

> Both the federal and Pennsylvania constitutions permit third party consent to a search. When police officers obtain the voluntary consent of a third party who has the authority to give consent, they are not required to obtain a search

---

**3.** In his appellate brief, Appellant also relies on this Court's decision in *Commonwealth v. Beattie*, 411 Pa.Super. 177, 601 A.2d 297 (1991), to claim that his driveway constituted curtilage. However, our decision in *Beattie* does not support this argument, as this Court's discussion of public and private property related to the "public inconvenience" requirement of *Beattie's* disorderly conduct conviction.

warrant based upon probable cause. The Supreme Court explained that a third party possessing common authority over a premises can give valid consent to search against a non-consenting person who shares authority because it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Commonwealth v. Reese,* 31 A.3d 708, 722 (Pa.Super.2011) (quoting *Commonwealth v. Hughes,* 575 Pa. 447, 459, 836 A.2d 893, 900 (2003) (internal citations and quotation marks omitted)).

▪▪▪ In response, Appellant claims Officer Guzzo required Ms. Simmen to allow him in the house and contends that the Commonwealth was required to present Ms. Simmen as a witness to prove she consented to Officer Guzzo's entry in her residence. We disagree. Officer Guzzo testified under oath that Ms. Simmen allowed him into the residence and the trial court accepted Officer Guzzo's uncontradicted testimony as credible. "The suppression court has sole authority to assess the credibility of the witnesses and is entitled to believe all, part or none of the evidence presented." *Reese,* 31 A.3d at 721–22 (quoting *Commonwealth v. Shine,* 784 A.2d 167, 168 (Pa.Super.2001)). We will not disturb the trial court's credibility findings on appeal.

▪▪▪ Lastly, Appellant contends that Officer Guzzo did not have probable cause to arrest him for Driving Under the Influence. An officer has probable cause to make a warrantless arrest "when the facts and circumstances within the police offi-

cer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Commonwealth v. Dommel,* 885 A.2d 998, 1002 (Pa.Super.2005) (citation omitted). "Probable cause justifying a warrantless arrest is determined by the totality of the circumstances.... Furthermore, probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent persons act." *Commonwealth v. Williams,* 941 A.2d 14, 27 (Pa.Super.2008) (citations and quotation marks omitted).

Appellant argues that Officer Guzzo was not warranted in believing Appellant was driving under the influence because he failed to conduct field sobriety tests. However, this Court has held that "reasonable grounds to arrest [for suspicion of DUI] does not require the failure of field sobriety tests." *Commonwealth v. Slonaker,* 795 A.2d 397, 402 (Pa.Super.2002). In *Slonaker,* this Court upheld a trial court's finding that the arresting trooper had probable cause that Slonaker was driving under the influence after the trooper observed Slonaker's erratic driving for five miles and noted Slonaker smelled of alcohol and had bloodshot eyes.[4] *Id.*

▪▪▪ Likewise, Officer Guzzo had probable cause to arrest Appellant for DUI. Appellant was involved in a hit-and-run accident in which he hit a retaining wall, a stairway railing, and a mailbox at approximately 1:00 in the morning. Appellant was unable to control his vehicle to avoid an accident that occurred on a dry night

4. In *Slonaker,* the officer did conduct field sobriety tests, but the results of the tests were suppressed by the trial court as Slonaker was seventy years old and the National Highway Traffic Safety Administration Manual indicated that these tests were not designed for persons over sixty years old. *Slonaker,* 795 A.2d at 400 n. 4.

with no adverse weather conditions. Despite being the sole cause of the accident, Appellant did not notify the homeowner of the accident, but drove away, leaving his front bumper in the homeowner's yard. Appellant admitted drinking alcohol earlier that evening and stated that he left the scene of the accident because he felt his vehicle was "drivable." N.T. Trial, 9/8/11, at 18. When Officer Guzzo arrived at Appellant's residence, he noted that Appellant's eyes were bloodshot and he smelled of alcohol. Viewing the totality of the circumstances, we conclude the trial court did not err in denying Appellant's suppression motion as Officer Guzzo had probable cause to arrest Appellant for Driving under the Influence of Alcohol.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of Sentence affirmed.