J-S59031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| FRANK ROSCOE, | |
| Appellee | No. 751 EDA 2014 |

Appeal from the Order entered February 7, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007071-2013

BEFORE: SHOGAN, LAZARUS, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED SEPTEMBER 26, 2014**

The Commonwealth of Pennsylvania (Commonwealth) appeals from the February 7, 2014 order which granted the motion to suppress filed by defendant Frank Roscoe (Roscoe). We reverse and remand for further proceedings consistent with this memorandum.

The trial court summarized the facts of the case as follows.

On April 25, 2013, at 9:15 p.m., Officer Matthew York, assigned to the South Gang Task Force, was on duty with his partner, Officer Mergiotti, patrolling the area of 1900-2000 Gerritt Street in Philadelphia in a marked patrol vehicle when he observed [Roscoe] and an unidentified black male engaged in a "close conversation" from his police vehicle one hundred fifty (150) feet away. Officer York, who testified that he had been a police officer for three and one-half years and had participated in hundreds of narcotics arrests, approached [Roscoe] with his

---

[*] Retired Senior Judge assigned to the Superior Court.

partner. As they did so, Officer York saw [Roscoe] reach into his pants in the groin area and remove a small, black, opaque plastic bag from it. Officer York then observed [Roscoe] reach into the bag and[,] using his thumb and forefingers, he appeared to pull small objects out of it. At the time, the other male was holding U.S. currency.

Officer York conceded that he did not see a small object, but "inferred" by the way [Roscoe] was using his thumb and forefinger, that there were small objects in the bag. Officer York further admitted that he observed nothing being passed between [Roscoe] and the other male, stating, "the sale was never complete."

Officer York further testified that at some point both men looked in the officers' direction at which time they "quickly" turned, and walked away. When they did so, Officer York saw [Roscoe] stuff the black bag down his pants and head westbound on the 2000 block of Gerritt. The other male crossed the street and continued down the 2000 block of Gerritt with a five dollar bill in his hand.

Officer York explained that he stopped [Roscoe] at this time based upon [Roscoe's] "motions, what he did while under surveillance, and because of where he stuffed the black plastic bag." He testified that he "believed that it was a sale, a narcotics transaction." Officer York testified that he is experienced with how narcotics are packaged and sold. When questioned on the reason for his belief that a narcotics transaction was occurring, Officer York stated:

> The fact that - how he was holding the objects, where he pulled the object from. It's a very common place for people to hide the narcotics because sometimes it's not checked. Also, that the second male had [a] $5 bill in his hand and they were in close conversation. And in addition to that, the reaction to when they noticed us, the police, as we approached. Both of them quickly turned and tried to walk away as he concealed the item in his groin area.

After Officer York stopped [Roscoe], he searched him and recovered the plastic bag from [his] groin area which, upon

inspection, was found to contain fifteen small purple Ziploc baggies containing what testing later revealed to be crack-cocaine and one small plastic bag containing several new and unused purple Ziploc baggies. A razor blade and ninety dollars were also recovered from [Roscoe's] right pant pocket. All recovered items were placed on a property receipt.

Suppression Court Opinion, 6/2/2014, at 2-4 (footnote and citations to the record omitted). Roscoe moved to suppress the recovered evidence. After a hearing, the suppression court granted the motion. The Commonwealth timely filed a notice of appeal[1] and a statement of errors complained of on appeal.

The Commonwealth presents one question for this Court's review: "Where an experienced police officer, trained in narcotics detection and with hundreds of narcotics arrests, recognized a probable drug transaction unfolding in front of him … did the [suppression] court err in concluding there was no probable cause to arrest [Roscoe]?" Commonwealth's Brief at 3.

We consider the Commonwealth's question mindful of the following.

When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the

_____

[1] The Commonwealth has certified that the suppression order substantially handicaps the prosecution, making this an interlocutory appeal as of right under Pa.R.A.P. 311(d).

reasonableness of the inferences and legal conclusions drawn from those findings. In appeals where there is no meaningful dispute of fact, as in the case *sub judice*, our duty is to determine whether the suppression court properly applied the law to the facts of the case.

*Commonwealth v. Gorbea-Lespier*, 66 A.3d 382, 385-86 (Pa. Super. 2013) (quoting *Commonwealth v. Arthur*, 62 A.3d 424, 427 (Pa. Super. 2013)) (internal quotation marks and citations omitted).

Here, the facts are not in dispute, as only one witness (Officer York) testified at the suppression hearing, and the suppression court found his testimony credible. *See* N.T., 2/7/2014, at 26 ("[T]he officer testified credibly, but I don't think the set of events rises to a level of probable cause."). Further, the parties agree that the evidence at issue was obtained after Roscoe was arrested and searched incident to that arrest, rendering probable cause the required constitutional standard. *See* Roscoe's Brief at 5 (citing Commonwealth's Brief at 5).

Thus we are presented solely with the legal question of whether the facts recited by the trial court, quoted above, give rise to probable cause. Narrowing the issue further, the Commonwealth, Roscoe, and the suppression court all cite as the relevant authority our Supreme Court's decision in *Commonwealth v. Thompson*, 985 A.2d 928 (Pa. 2009).

In *Thompson*, the Court summarized the facts at issue as follows.

On January 21, 2005, in the evening, Philadelphia Police Officer Orlando Ortiz was on duty in the 2400 block of Leithgow Street. Officer Ortiz knew the neighborhood as a high crime area in which narcotics, and specifically heroin, regularly were

sold. The area was designated by the Philadelphia Police Department as an "Operation Safe Streets" neighborhood. Officer Ortiz, a nine-year veteran of the police force, and his partner, Officer Correa, were in plainclothes and driving an unmarked vehicle. Officer Ortiz saw a car parked by the sidewalk and observed Appellant standing in the street by the driver's side door. Officer Ortiz watched Appellant hand the male driver some money and saw the driver give Appellant a small object in return. Based on what he saw on the street and what he knew, including the fact that he had made several hundred narcotics arrests of this very type, Officer Ortiz believed the men were engaged in a drug transaction. Officer Ortiz stopped Appellant and recovered from his pocket a packet of heroin.

*Id.* at 930. The Court then examined relevant precedent.

In [***Commonwealth v. Lawson***, 309 A.2d 391 (Pa. 1973)], police observed the appellant as he stood on the street and received currency from individuals to whom he handed small objects that he retrieved from his wife. After observing three such transactions, police arrested the couple, who ultimately faced conspiracy and narcotics sales charges. In response to a claim that police lacked probable cause to arrest, the ***Lawson*** Court noted that "all of the detailed facts and circumstances must be considered." The ***Lawson*** Court concluded that those circumstances amply supported probable cause.

> The time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where the small items were kept by one of the sellers is important; the movements and manners of the parties are important. Considering the facts and circumstances in their totality, we conclude that the officers acted as prudent men in believing that some type of contraband was being sold.

In [***Commonwealth v. Banks***, 658 A.2d 752 (Pa. 1995)], decided over twenty years after ***Lawson***, this Court considered whether a police officer's "chanced" observation of a "single, isolated exchange of some currency for some unidentified item or items, taking place on a public street at midday," was

sufficient to establish probable cause where the suspect also fled from police.  The **Banks** Court held that such circumstances fell "narrowly short" of probable cause.  While the **Banks** opinion gave few details on the specific circumstances of that case, the majority noted that "well recognized additional factors giving rise to probable cause were not present."  These included "a case where a trained narcotics officer observed either drugs or containers commonly known to hold drugs ... a case where the police observed multiple, complex, suspicious transactions ... [or] a case in which the police officer was responding to a citizen's complaint or to an informant's tip."

[**Commonwealth v. Dunlap**, 941 A.2d 671 (Pa. 2007),] is this Court's most recent case on the issue of on-the-street drug trade.  In **Dunlap**, Philadelphia Police Officer Devlin, a five-year veteran of the police force and a nine-month member of the drug strike force, observed the suspect on a Philadelphia street. Officer Devlin, who had previously conducted about fifteen to twenty narcotics arrests in the area, testified that the neighborhood suffered from "a high rate of nefarious activity, including drug crimes."  As Officer Devlin watched, the suspect engaged in a brief conversation with another man to whom he handed money and from whom he received small objects in return.  Based on his experience and beliefs, Officer Devlin concluded that he had witnessed a drug transaction and so he arrested the suspect.  Cocaine in the suspect's possession led to drug charges and, ultimately, a pre-trial motion to suppress the evidence based on lack of probable cause.

*Id.* at 932-34 (footnote and internal citations omitted).

The **Thompson** Court thoroughly examined the determinations of the suppression court and Superior Court that the evidence was sufficient to establish probable case, as well as the majority and concurring opinions of the Pennsylvania Supreme Court that Officer Devlin lacked probable cause to believe that Dunlap had committed a crime.  The disagreement in the Supreme Court was over whether police training and experience was to be considered as a factor in the probable-cause analysis.  The **Thompson** Court

then adopted the concurring viewpoint, holding "a police officer's experience may fairly be regarded as a relevant factor in determining probable cause." *Id.* at 935 (quoting *Dunlap*, 941 A.2d at 679 (Saylor, J., concurring).). The Court offered its holding with the following proviso:

> We caution, however, that an officer's testimony in this regard shall not simply reference "training and experience abstract from an explanation of their specific application to the circumstances at hand." As the *Dunlap* majority itself observed, "a court cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." Indeed, a factor becomes relevant only because it has some connection to the issue at hand. …

*Id.* at 935 (internal citations omitted).

Applying this law to the facts of the case before it, the *Thompson* Court held as follows.

> The evidence at the suppression hearing established that Officer Ortiz was a nine-year veteran of the police force who was on undercover patrol in a high crime area that had been designated by the Philadelphia Police Department as an Operation Safe Streets neighborhood. In addition to this designation by the department, Officer Ortiz was personally familiar with heroin sales activity in the neighborhood, heroin packaging, and hand-to-hand drug exchanges on the street. In drawing a nexus between his experience and the observation he made, Officer Ortiz testified that he had seen this type of "exchange done several hundred times" on the street and had made several hundred narcotics arrests of this very type.
>
> Because we have determined that a police officer's experience may be fairly regarded as a relevant factor in determining probable cause, and due to the presence of additional factors in support of Officer Ortiz's conclusion that he was witnessing a drug transaction, we find no error in the Superior Court's conclusion that probable cause was present in

this case. We do not base our decision solely on Officer Ortiz's experience and the connection he articulated between that experience and what he observed. We also rely on the fact that the transaction at issue occurred in the nighttime hours, on the street, in a neighborhood that the police department selected for the "Operation Safe Streets" program.

*Id.* at 936-37 (footnotes omitted).

Turning to the instant appeal, Roscoe and the suppression court are of the position this case is materially distinguishable from **Thompson**, requiring the opposite result (*i.e.*, suppression). Roscoe's Brief at 7; Suppression Court Opinion, 6/2/2014, at 7. Specifically, the suppression court noted that Officer York did not witness a completed transaction; there was no evidence that Roscoe was observed in a high-crime area; Officer York had fewer years of experience than the officer in **Thompson**; and Officer York did not state how many of the hundreds of drug transactions he has observed were of the "very type" as the one he allegedly observed in the instant case. Suppression Court Opinion, 6/2/2014, at 7-9.

Conversely, the Commonwealth argues that, as in **Thompson**, an examination of the totality of the circumstances warrants the conclusion that Officer York had sufficient information to conclude reasonably that there was a fair probability that Roscoe had committed a crime. Commonwealth's Brief at 11, 14. It claims that the suppression court erred in evaluating each aspect of the evidence piecemeal rather than considering it as a whole. **Id.** at 6. We agree with the Commonwealth.

An officer has probable cause to make a warrantless arrest when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances.... Furthermore, probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent persons act.

*Commonwealth v. Simmen*, 58 A.3d 811, 817 (Pa. Super. 2012) (citations and quotation marks omitted). "Moreover, probable cause for a warrantless arrest exists when criminality is **one** reasonable inference; it need not be the only, or even the most likely, inference." *Commonwealth v. Romero*, 673 A.2d 374, 377 (Pa. Super. 1996) (emphasis in original).

Here, Officer York observed Roscoe and another man "engaged in close conversation" in the night on a dark street. N.T., 2/7/2014, at 5. Roscoe removed a bag from the groin area of his pants, and reached into that bag to pluck out an item while the other man moved to pass money to Roscoe. *Id.* at 7. When they saw a police car approaching, Roscoe stuffed the bag back down the front of his pants and the two men scattered. *Id.* at 6. Officer York's narcotics training and experience in making several hundred narcotics arrests had given him knowledge of how drugs are packaged and sold, and that dealers often hide narcotics inside their pants near the genitals, rather than in a more conventional storage area such as pockets, because the groin area sometimes is "not checked." *Id.* at 7-8. Adding the facts that, upon the approach of the police "[b]oth [men] quickly

turned and tried to walk away as [Roscoe] concealed the item in his groin area[,]" Officer York concluded that he had witnessed Roscoe's failed attempt to sell illegal narcotics.  *Id.* at 8.

We hold that Officer York's belief that Roscoe possessed contraband which he had been about to sell is certainly one reasonable inference made from the totality of the circumstances, if not the most reasonable inference. The transaction at issue was of an item collected from a bag that had just been removed from the front of Roscoe's pants, occurred at night, on a street, in a secretive fashion, and was abruptly halted as soon as the men saw the police.  Although Officer York obviously did not know for certain that Roscoe had attempted to sell narcotics, certainty is not required.  The factual distinctions from *Thompson* are not material; under *Lawson* and its progeny, Officer York was reasonably prudent in believing that Roscoe possessed drugs.

Order reversed.  Case remanded for further proceedings consistent with this memorandum.  Jurisdiction relinquished.

Judge Shogan joins the memorandum.

Judge Lazarus files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/26/2014</u>