J-A34042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JASON EDWARD BEAMER | |
| Appellant | No. 608 MDA 2014 |

Appeal from the Judgment of Sentence March 21, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at No: CP-41-CR-0000854-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 24, 2015**

Appellant, Jason Edward Beamer, appeals from the trial court's March 21, 2014 judgment of sentence imposing six months of intermediate punishment for driving under the influence of alcohol in violation of 75 Pa.C.S.A. § 3802(a)(1).  We affirm.

A police officer investigating a motor vehicle accident traversed a portion of Appellant's driveway and, from that vantage point, observed Appellant standing on his unenclosed concrete slab back porch.  The police officer initiated a conversation with Appellant, and Appellant agreed to undergo field sobriety testing, which took place in his driveway.  The police officer never left Appellant's driveway.  Appellant was apprehended after he failed the field sobriety tests.  Appellant filed a pretrial motion to suppress evidence, arguing the officer invaded the curtilage of his property without a

warrant or probable cause and exigent circumstances. The sole issue on appeal is whether the trial court erred in denying Appellant's suppression motion.

The trial court's October 30, 2013 opinion offers a detailed recitation of the pertinent facts:

> On April 4, 2013 at 6:39 PM, Corporal Morris Sponhouse (Sponhouse) of the Old Lycoming Township Police Department was dispatched to the area of 2400 Northway Road Ext for a motor vehicle accident. Approximately five (5) minutes later, Sponhouse arrived at the scene and observed two individuals standing next to an operable but damaged motorcycle on the side of the road. The driver and passenger of the motorcycle stated that they were following a white dump truck and as they started to pass the truck in a passing zone they were cut off. The driver and passenger stated that the dump truck did not have working taillights or use a turn signal when it turned onto a driveway at 2400 Northway Road Ext. The passenger from the motorcycle pointed to the dump truck, which was visible from the road, and stated that a white male exited the truck, did not respond to requests to come to the location of the motorcycle, and walked behind a house next to the driveway. While Sponhouse talked to the driver and passenger a white female from the house walked to the location of the motorcycle and indicated she wanted to talk. Sponhouse told her he would talk to her after he finished with the motorcycle occupants but she walked away.
>
> Sponhouse parked his unmarked vehicle halfway down the driveway and walked towards the end of the driveway where the dump truck was located. The driveway extended past both the back of the house and the attached porch. Based on a drawing that Sponhouse drew during his testimony, he never went beyond the area of the driveway or the side of the house/porch. Once Sponhouse got near the dump truck on the driveway he saw [Appellant] grilling chicken under the porch. Specifically, [Appellant] was located on a concrete slab that had a roof above it. The roof did not have enclosed walls and was open to the outside other than the section that connected to the house.

Sponhouse asked [Appellant] what happened while he was standing on the driveway and [Appellant] stated that the motorcycle must have lost control while he turned into the driveway. After informing [Appellant] that the driver and passenger of the motorcycle said the dump truck did not have working taillights or use a turn signal, [Appellant] agreed to have the lights of his truck checked. None of [Appellant's] lights worked except for one on the front passenger side of the dump truck.

While [Appellant] walked to the dump truck to check the truck's lights, Sponhouse observed that [Appellant] did not have proper balance. While continuing to communicate with [Appellant] about the vehicle's lights he further noticed that [Appellant] had slurred speech, red eyes, and that he smelled of alcohol. [Appellant] agreed to conduct field sobriety exercises on the driveway. As a result, [Appellant] was charged with one count of Driving Under Influence of Alcohol or Controlled Substance.

Trial Court Opinion, 10/30/13, at 1-2.

After the trial court denied Appellant's suppression motion, the case proceeded to a January 15, 2014 bench trial, at the conclusion of which the trial court found Appellant guilty of violating § 3802(a)(1). This timely appeal followed. Appellant argues, based on Corporal Sponhouse's allegedly unlawful entry into the curtilage of Appellant's home, that the trial court should have suppressed all evidence Corporal Sponhouse gathered during that encounter. That evidence consists of Corporal Sponhouse's observations of Appellant, the field sobriety test results, and Appellant's eventual refusal to submit to a blood test after the allegedly unlawful arrest.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions

- 3 -

drawn from those facts are correct." ***Commonwealth v. Houck***, 102 A.3d 443, 455 (Pa. Super. 2014).

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts

***Id.*** (quoting ***Commonwealth v. Williams***, 941 A.2d 14, 26-27 (Pa. Super. 2008) (*en banc*)). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Id.*** (quoting ***Commonwealth v. Clemens***, 66 A.3d 373, 378 (Pa. Super. 2013)).

Absent probable cause and exigent circumstances, warrantless searches of a private home violate the Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution. ***Commonwealth v. Simmen***, 58 A.3d 811, 815 (Pa. Super. 2012). The constitutional protection against warrantless searches extends to the curtilage surrounding the home. ***Commonwealth v. Gindlesperger***, 706 A.2d 1216, 1219-20 (Pa. Super. 1997), *affirmed*, 743 A.2d 898 (Pa. 1999), *cert. denied*, 533 U.S. 915 (2001). "The curtilage area surrounding a private house is entitled to protection under the Fourth Amendment as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." ***Id.*** Courts define curtilage "by reference to the factors that determine whether an individual reasonably may expect that

an area immediately adjacent to the home will remain private." *Id.* (quoting

*Oliver v. United States*, 466 U.S. 170, 180 (1984)).

Entry upon private property, however, is not strictly forbidden. Recently, the United States Supreme Court wrote:

> A license may be implied from the habits of the country, notwithstanding the strict rule of the English common law as to entry upon a close. We have accordingly recognized that the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds. This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters. **Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do.**

*Florida v. Jardines*, 133 S. Ct. 1409, 1415-16 (2013) (citations and quotation marks omitted, emphasis added).

In denying Appellant's motion, the trial court relied on *Simmen*. There, the homeowner heard a crash, went outside and observed damage to a retaining wall, a stair rail, and his mailbox. *Simmen*, 58 A.3d at 813. The defendant's bumper was torn from the car and remained in the homeowner's driveway. *Id.* The investigating police officers followed a trail of fluid to the defendant's home. *Id.* A vehicle was parked in the defendant's driveway leaking fluid and missing its front bumper. *Id.* Police knocked on the front door and spoke to the defendant's wife, who permitted them to enter the

home and speak to the defendant. *Id.* at 814. The defendant was arrested for drunk driving. *Id.*

We concluded police did not invade the curtilage of the defendant's home by walking on the driveway, as the driveway was accessible by the general public:

> Based on the description of the driveway, and the location of the car on it, there was no evidence presented at the time of the suppression hearing to support an assertion that there was any expectation of privacy in the area. The driveway was in the front of the house, leading from the street to the garage contained within the actual residence. The car was parked in plain view of the street on the driveway, within twenty (20) feet of the road. There was no evidence of signs warning against trespass on the driveway or that the driveway was gated or fenced or shielded from the view of the street in any way. In fact, it appears from the description of the house that access to the front door of the residence was made via the driveway. These facts certainly suggest that there could be no reasonable expectation of privacy in the area of the driveway.

*Id.* at 815-16 (quoting the trial court's opinion with approval). Since the driveway was accessible to the public, this Court concluded the driveway was a lawful vantage point from which police could observe the defendant's damaged vehicle. *Id.* at 816.

Appellant relies on **Commonwealth v. Lee**, 972 A.2d 1 (Pa. Super. 2009), in support of his argument that Corporal Sponhouse violated the Fourth Amendment because he invaded the curtilage of Appellant's home.[1]

---

[1] We note that no issue of exigent circumstances exists in this case. The Commonwealth has not filed a brief, choosing instead to rely on the trial

*(Footnote Continued Next Page)*

In *Lee*, a homeowner heard a crash and observed a pickup truck speed away. *Id.* at 2. The defendant destroyed the homeowner's mailbox and a tree in her yard. *Id.* A police officer followed a trail of antifreeze from the site of the crash to the defendant's home. *Id.* The officer parked his car in front of the defendant's home, walked down the defendant's driveway and observed the rear end of a pickup truck parked behind the defendant's home. *Id.* The officer continued behind the defendant's home and observed severe damage to the front end of the truck. *Id.* The defendant's wife brought him outside to talk to the police, and he was arrested for drunk driving. *Id.* On appeal, this Court concluded the search was illegal. *Id.* at 5. The Commonwealth did not dispute the defendant's privacy interest in the area behind his home where the investigating officer observed the damage to front end of the truck. *Id.* at 4. Rather, the parties in *Lee* disputed the existence of exigent circumstances.

*Lee* is legally and factually inapposite. Legally it is inapposite because the Commonwealth did not contest that the officer's investigation invaded the curtilage of the defendant's home and therefore implicated his Fourth Amendment rights. Rather, the parties disputed the existence of exigent circumstances. Factually, *Lee* is inapposite because the investigating officer went behind the defendant's home. Here, Corporal Sponhouse traversed

*(Footnote Continued)* ───────────

court's opinion. The trial court did not rely on exigent circumstances to support its denial of Appellant's suppression motion.

- 7 -

Appellant's driveway until he observed Appellant standing outside on a porch. N.T. Hearing, 9/20/13, at 6. From his vantage point on the driveway alongside Appellant's house, Corporal Sponhouse observed Appellant grilling chicken on an unenclosed concrete slab porch. *Id.* at 6-7. Corporal Sponhouse initiated conversation, and Appellant walked to Corporal Sponhouse and agreed to allow an inspection of the truck's lights. *Id.* at 7. Corporal Sponhouse did not follow Appellant into the house when Appellant went inside to retrieve his driver's license. *Id.* at 9. Corporal Sponhouse waited until Appellant came back outside and then administered field sobriety tests in the driveway. *Id.* In summary, Corporal Sponhouse did not proceed behind Appellant's home to collect evidence that otherwise would have been hidden from view. In traversing the driveway, Corporal Sponhouse presumably used the same route taken by any visitor to Appellant's home, such as the trick-or-treaters or girl scouts mentioned in *Jardines*.

The trial court summarized the evidence as follows:

> Here, the dump truck that was in question was visible not only from the road but also from the location of the vehicle accident. Sponhouse testified that he did not see a fence or any signs warning against trespass. The driveway led from the road to the side of [Appellant's] house. Based on Sponhouse's testimony, he never went beyond the side of the house/porch or the outside of the driveway prior to [Appellant's] consent to check the lights on the truck. Unlike **Lee**, **Sponhouse did not leave the driveway**. Therefore, based on the characteristics of the driveway, this Court finds that [Appellant] did not have a reasonable expectation of privacy to the driveway and that Sponhouse was permitted to enter the driveway to investigate.

Trial Court Opinion, 10/30/13, at 4-5 (emphasis added).

We discern no abuse of discretion or legal error in the trial court's ruling, and the record supports the court's recitation of the facts. The *Simmen* Court held that a defendant does not have a reasonable expectation of privacy in a driveway that is open to the general public. *Simmen*, 58 A.3d at 816. Likewise, a driveway open to the public is a lawful vantage point from which a police officer can make observations not subject to suppression. ***Id.*** Appellant's argument rests entirely on his assertion that Corporal Sponhouse invaded the curtilage of Appellant's home before he observed and interacted with Appellant. The record, as summarized above, supports the trial court's finding that the driveway was open to the public and that Corporal Sponhouse never left the driveway during his investigation. Based on all of the foregoing analysis, we conclude Appellant's argument lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2015