J-S27003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RICHARD ERIC BOWMAN-DIX, | |
| Appellant | No. 1070 MDA 2015 |

Appeal from the Judgment of Sentence April 20, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0004378-2014

BEFORE:  SHOGAN and DUBOW, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                          **FILED JULY 14, 2016**

Appellant, Richard Eric Bowman-Dix, appeals from the judgment of sentence entered in the Court of Common Pleas of York County on April 20, 2015.[1]  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

---

[*]  Former Justice specially assigned to the Superior Court.

[1]  To the extent Appellant purports to appeal from the June 12, 2015 order denying his post-sentence motion, we note that in a criminal context, an appeal properly lies from the judgment of sentence, not an order denying post-sentence motions.  **See Commonwealth v. Dreves**, 839 A.2d 1122, 1125 n. 1 (Pa. Super. 2003) (*en banc*) (in a criminal action, appeal properly lies from the judgment of sentence made final by the denial of a post-sentence motion).  The caption correctly reflects that the appeal is taken from the April 20, 2015 judgment of sentence.

In the late evening hours of May 24, [2014], Corporal Sean Taylor of the Pennsylvania State Police came into contact with a 2000 Audi A6 during a routine stop at a DUI checkpoint on the I-83 Business Loop in York City. When approached by Corporal Taylor, the driver, later identified as the Appellant, rolled his window down approximately 2 inches and refused to open it further. Corporal Taylor struggled to see into the vehicle. Corporal Taylor opened the driver side door and instructed the Appellant to exit the vehicle. When the Appellant refused to comply, Corporal Taylor reached into the vehicle and attempted to unbuckle the Appellant's seatbelt in order to forcibly remove him. The Appellant used his elbow to push Corporal Taylor out of the vehicle.

Several other troopers surrounded the vehicle. Trooper Jeremy Corrie utilized his Taser to drive stun the Appellant in his thigh. A struggle ensued and Trooper Corrie deployed Taser probes into the Appellant's torso. The Appellant's brother, seated in the passenger seat, reached over and removed the probes from the Appellant. Trooper Timothy Schwartz then deployed his Taser probes into the Appellant's torso. The troopers forcibly removed the Appellant from the vehicle and took him into custody.

On March 18, 2015, the [trial court] denied the Appellant's Omnibus Pretrial Motion to Suppress. A jury trial was held from March 18 to March 20, 2015. The jury found the Appellant guilty of resisting arrest[1] and disorderly conduct.[2] The jury found the Appellant not guilty of disarming a law enforcement officer.[3] On June 12, 2015, the [trial court] denied the Appellant's Post-Sentence Motion requesting a judgment of acquittal or a new trial.

[1] 18 Pa.C.S.A. 5104.
[2] 18 Pa.C.S.A. 5503(a)(4).
[3] 18 Pa.C.S.A. 5104.0(a)(1).

Trial Court Opinion, 9/1/15, at 1-2 (internal citations omitted).

Appellant filed a timely notice of appeal on June 22, 2015. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Whether the verdict was against the weight of the evidence to the point that the verdict shocks one's sense of justice?

2. Whether the Commonwealth's evidence supported the jury's verdicts finding the Appellant guilty of Resisting Arrest and Disorderly Conduct?

3. Whether the trial court erred in denying the Appellant's Omnibus Pretrial Motion?

Appellant's Brief at 5.

When an appellant raises both a sufficiency-of-the-evidence issue and a suppression issue, we address the sufficiency of the evidence supporting the conviction first, and we do so without a diminished record:

[W]e are called upon to consider all of the testimony that was presented to the jury during the trial, *without consideration as to the admissibility of that evidence*. The question of sufficiency is not assessed upon a diminished record. Where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence. The remedy in such a case is the grant of a new trial.

**Commonwealth v. Sanford**, 863 A.2d 428, 431–432 (Pa. 2004) (emphasis in original). Thus, we begin by addressing the sufficiency of the evidence, as "[t]he Double Jeopardy Clause bars retrial after a defendant's conviction has been overturned because of insufficient evidence." **Commonwealth v. Mullins**, 918 A.2d 82, 85 (Pa. 2007) (citations omitted). Accordingly, we address Appellant's second issue first.

In it, Appellant argues that the evidence presented at trial was not sufficient to support the jury's verdict finding Appellant guilty of resisting

- 3 -

arrest and disorderly conduct. Appellant's Brief at 14. Appellant further explains his position as follows:

> Specifically, [Appellant] contends that the Commonwealth presented insufficient evidence that [Appellant] created a substantial risk of bodily injury to the state police troopers, or employed means justifying or requiring substantial force by the police to overcome the any [sic] resistance offered by [Appellant], or that [Appellant], intending to cause a public inconvenience, annoyance or alarm, created an illegitimate hazardous or physically offensive condition and continued in this unlawful conduct after reasonable warning to stop.

*Id.*

The standard for evaluating sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Estepp*, 17 A.3d 939, 943–944 (Pa. Super. 2011).

As noted, Appellant argues that the evidence was insufficient to establish resisting arrest and disorderly conduct. Those crimes are defined in the Crimes Code as follows:

**§ 5104. Resisting arrest or other law enforcement**

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104.

**§ 5503. Disorderly conduct**

**(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

* * *

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

* * *

**(c) Definition.**--As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S. § 5503.

With regard to Appellant's resisting arrest conviction, the evidence presented at trial reflects the following series of events that occurred on the

evening of May 24, 2014. Corporal Sean Taylor testified that a checkpoint was established on the I-83 Business Loop in York County, near York hospital. N.T., 3/18/15, at 116-118. Appellant drove into the DUI checkpoint and was approached by Corporal Taylor. *Id.* at 121. Corporal Taylor testified that the windows of Appellant's car were tinted, and the driver's side window was rolled down approximately two to three inches. *Id.* Because Corporal Taylor could not see into the car well, he directed Appellant to roll down his window. *Id.* Appellant refused to wind down the window. *Id.* As a result, Corporal Taylor opened Appellant's car door. *Id.* Appellant asserted that Corporal Taylor was not allowed to open Appellant's car door, and proceeded to pull the door shut, pulling the door closed on Corporal Taylor. *Id.*

Corporal Taylor then directed Appellant to provide his identification. *Id.* at 121. Appellant refused, claiming that he was not required to provide the identification as directed by Corporal Taylor. *Id.* at 122. Corporal Taylor advised Appellant that he was required to produce it because he was at the sobriety checkpoint and directed Appellant to step out of the vehicle. *Id.* at 122. In explaining why he asked Appellant to exit the car, Corporal Taylor testified:

> What peaked [sic] my interested was his lack of cooperation. I worked a number of DUI checkpoints. I've never encountered anybody like this in my time as a patrolman. I deal with a lot of people.

Surprisingly, a lot of people don't realize we do now more drug DUI's than alcohol DUI's. You can be arrested for under the influence – the section is under the influence of alcohol or controlled substance.

So a lot of times we arrest a lot of people that are under the influence of prescription medicines or illegal drugs.

* * *

At this point in time I didn't know if he was under the influence of a controlled substance. He wouldn't provide me with identification.

First he didn't roll down the window, so I couldn't do my DUI investigation. If he had just rolled down the window, handed me his ID, he would have been in and out and on his way.

N.T., 3/18/15, at 122-123.

Appellant responded that he was not drunk, and as a result, did not need to step out of the vehicle. N.T., 3/18/15, at 122-123. Corporal Taylor testified that he asked Appellant to exit the vehicle several times, but Appellant consistently refused to do so. *Id.* at 125. In response to Appellant's assertion that he was not drunk, Corporal Taylor testified that he told Appellant that he did not think that Appellant was drunk, but because Appellant was acting erratic and irrational, he needed Appellant to get out of the vehicle so that he could look at Appellant's eyes for purposes of continuing his investigation. *Id.* at 125. Appellant continued to refuse to exit the vehicle. *Id.* Corporal Taylor asked Appellant if there was anything that he could do to get Appellant out of the vehicle before he would be required to use force to remove Appellant from the vehicle. *Id.* at 125-126.

After receiving no response from Appellant, Corporal Taylor reached into the car to unbuckle Appellant's seatbelt. *Id.* at 127. At that point, Appellant used his elbow to push Corporal Taylor out of the vehicle. *Id.* at 127.

Upon observing the commotion, other troopers at the checkpoint approached Appellant's vehicle. N.T., 3/18/15, at 128, 167-168, 182. Appellant continued to refuse to exit the vehicle. *Id.* at 128-129. Because other means of force, including pepper spray and hands-on tactics, were not appropriate given the circumstances, Trooper Jeremy Corrie used the Taser in "drive stun" mode[2] against Appellant. *Id.* at 130-133. Appellant grabbed Trooper Corrie's Taser and attempted to pull it away from him. *Id.* at 133. Trooper Corrie was able to pull away from Appellant and then proceeded to place the Taser cartridge in the Taser and shoot the probes into Appellant. *Id.* at 133-134. At that point, Appellant's brother, who was in the front passenger seat, grabbed the probes and pulled them from Appellant's chest. *Id.* at 134. Another trooper at the scene, Trooper Timothy Schwartz, then effectuated his Taser with probes on Appellant. *Id.* at 134. While Appellant was under power of the Taser, Troopers Tristan Bennett and Harold Fleming

_____

[2] Corporal Taylor explained that using the Taser in this way was consistent with using it as a pain compliance tool. In "drive stun" mode, the probes are removed from the Taser, and the Taser is used like a stun gun and can be placed on a specific part of the body. The individual being tased feels pain only where the Taser is touching the individual's body. As explained by Corporal Taylor: "And on our use of force array, the Taser without the probes in it is the lowest use of force other than escort techniques." *Id.* at 132.

forcibly pulled Appellant from the vehicle. *Id.* at 136, 183. Once out of the vehicle and on the ground, Appellant continued to struggle against the troopers and refused to put his arms behind his back. *Id.* at 183-184. Trooper Fleming testified that after applying a substantial amount of force, he and Trooper Bennett were able to handcuff Appellant. *Id.*

Viewed in the light most favorable to the Commonwealth, the evidence supports the conclusion that Appellant acted with the intent of preventing a public servant from effecting a lawful arrest[3] and did so by engaging in actions that required troopers to use "substantial force to overcome" his resistance. 18 Pa.C.S. § 5104. Accordingly, there was sufficient evidence to support Appellant's conviction of resisting arrest.

Furthermore, the record reflects evidence sufficient to support Appellant's conviction of disorderly conduct. Appellant's actions created a hazardous and physically offensive condition for the troopers, himself, and the occupants of Appellant's vehicle, including a young girl Appellant identified as his niece. N.T., 3/18/15, at 125-126. Appellant's actions also caused a backlog of vehicles attempting to proceed through the DUI checkpoint, thereby creating a public inconvenience. *Id.* at 128. As noted, Appellant's actions occurred in a public place: at a DUI checkpoint on the

_____

[3] We note that Appellant does not contend that this was an unlawful arrest. In fact, Appellant concedes that "Pennsylvania State Police are granted the authority to conduct an arrest based on a violation of a request to produc[e] identification." Appellant's Brief at 16.

Business Loop of I-83 in York County. *Id.* at 116-118. Thus, the evidence supports the conclusion that Appellant acted with intent to, or recklessly created a risk of causing a public inconvenience, annoyance or alarm, by creating "a hazardous and physically offensive condition" by his actions which served no legitimate purpose. 18 Pa.C.S. § 5503(a)(4). Accordingly, we agree with the trial court's conclusion that there was sufficient evidence supporting Appellant's conviction of disorderly conduct. Thus, Appellant's claim lacks merit.

Next, Appellant asserts that the trial court abused its discretion in denying Appellant's post-sentence motion, arguing that the jury's verdict finding him guilty of resisting arrest and disorderly conduct was against the weight of the evidence. Appellant's Brief at 9. Appellant contends that the trial court employed the wrong standard in evaluating whether the jury's verdict was against the weight of the evidence by relying on the jury's credibility determination to avoid a weight of the evidence analysis. *Id.* at 12.

With respect to a weight claim, we apply the following standards:

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and

allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751–752 (Pa. 2000) (citations, footnote, and internal quotation marks omitted).

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Serrano*, 61 A.3d 279, 289 (Pa. Super. 2013) (citation omitted).

The Commonwealth introduced ample evidence of Appellant's culpability with regard to the challenged convictions, and the jury was free to weigh the evidence as it did. We cannot conclude that the trial court abused its discretion by denying Appellant's weight challenge, and the verdict does not shock our sense of justice. *Widmer*, 744 A.2d at 751–752; *Serrano*, 61 A.3d at 289.

Finally, Appellant argues that the trial court erred in denying his omnibus pretrial motion. Appellant's Brief at 20. In his omnibus pretrial motion, Appellant asserted that he complied with the DUI checkpoint by stopping his vehicle and lowering his driver's side window an adequate amount to interact with the state police, that his vehicle's windows were not

too darkly tinted for the state police to view the interior of his vehicle, and that the state police violated his rights by forcefully removing him from his vehicle without any reasonable suspicion or indicia of DUI or other criminal offense. *Id.* at 21. As a result, Appellant avers that the additional investigation conducted by the troopers was unwarranted. *Id.* at 22. Thus, Appellant maintains, the state police violated his right to be free from unreasonable searches and seizures. *Id.* at 25.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

The Pennsylvania Supreme Court has explained the following with regard to sobriety checkpoints:

> Although the stopping of a motor vehicle at a sobriety checkpoint constitutes a seizure for constitutional purposes, such checkpoint stops are not *per se* unreasonable, and hence are not *per se* unconstitutional under either the Fourth Amendment to the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution. . . . [T]he United States Supreme Court concluded that sobriety checkpoints do not offend the Fourth Amendment because they are a reasonable means of advancing a vital public interest, involving only a modest intrusion on the privacy and liberty of motorists. Similarly, we have held that systematic, non-discriminatory, non-arbitrary checkpoints do not offend the Pennsylvania Constitution.

*Commonwealth v. Worthy*, 957 A.2d 720, 724 (Pa. 2008) (internal citations omitted).

Furthermore, 75 Pa.C.S. § 6308(b) provides:

> **(b) Authority of police officer.**--Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

Moreover, this Court has explained the following with regard to a warrantless arrest:

> An officer has probable cause to make a warrantless arrest when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the

- 13 -

person to be arrested. Probable cause justifying a warrantless arrest is determined by the totality of the circumstances. . . . Furthermore, probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent persons act.

*Commonwealth v. Simmen*, 58 A.3d 811, 817 (Pa. Super. 2012) (internal citations and quotation marks omitted). "[P]robable cause for a warrantless arrest exists when criminality is *one* reasonable inference; it need not be the only, or even the most likely, inference." *Commonwealth v. Romero*, 673 A.2d 374, 377 (Pa. Super. 1996) (emphasis in original).

Here, Appellant approached a lawful DUI checkpoint. N.T., 3/18/15, at 7. Corporal Taylor attempted to conduct the systematic program of checking drivers approaching the checkpoint by engaging with Appellant. *Id.* at 8-10. The evidence reflects that Appellant refused to comply with Corporal Taylor's requests that would allow for the minimal intended interaction with Appellant as a driver to ensure that Appellant was not operating the vehicle while under the influence. Appellant's evasive and irrational behavior, coupled with his refusal to comply with Corporal Taylor's request to roll the window down or exit the vehicle, gave Corporal Taylor reason to suspect that Appellant was under the influence of a controlled substance and that further investigation was warranted. *Id.* at 9-11. Appellant's subsequent actions in resisting the officers provided support for a determination of probable cause to arrest Appellant. Accordingly, the trial court did not err in denying Appellant's omnibus pretrial suppression motion.

Judgment of sentence affirmed.

P.J.E. Stevens joins this Memorandum.

Judge Dubow files a Concurring Statement in which P.J.E. Stevens joins.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2016